Syllabus. .

## Richmond.

## SHERRY V. LUMPKIN,

### March 18, 1920.

1. MUNICIPAL OFFICERS—*Police—Removal—Section 120 of the Constitution of 1902.*—Section 120 of the Constitution of 1902 gives the mayor of a city the power to suspend city officers, and the members of the police and fire departments, and the further power to remove such officers, and also the members of said departments, when authorized by the General Assembly. The mayor derives his power to suspend the persons described, and to remove the city officers, directly from the organic law. But section 120 of the Constitution does not give him the power to remove members of the police and fire departments. This power, by the very language of the section, must be derived from the General Assembly.

2. MUNICIPAL OFFICERS—*Removal—Power of Legislature—Section 120 of the Constitution of 1902.*—The General Assembly possesses all the sovereign powers of a free people not clearly and necessarily taken from it by the Constitution. The language of section 120 of the Constitution, which provides that the mayor of a city, when authorized by the General Assembly, may remove city officers and members of the police and fire departments, is not a grant of power, but a reference merely to the exercise of an existing legislative power.

3. MUNICIPAL CORPORATIONS—*Police—Removal—Power of Mayor.*— The power of a mayor to remove a policeman, if it exists at all, must be derived from some act, or acts, of the General Assembly, subsequent to the Constitution of 1902, section 120.

4. MUNICIPAL CORPORATIONS—*Policemen—Policemen State and Not City Officers.*—Policemen are State and not city officers.

5. MUNICIPAL CORPORATIONS—*Policemen—Removal by Mayor—Section 1033 of the Code of 1904.*—Section 1033 of the Code of 1904 fails to afford to the mayor of the city of Richmond, or to the mayor of any city of the Commonwealth, the right to remove a member of the police force, nor does it vest that right in any other official.

6. MUNICIPAL CORPORATIONS—*Policemen—Removal by Mayor—Charter of Richmond.*—The charter of Richmond, as amended by

Acts of 1916, p. 176, and 1918, p. 181, does not authorize the removal of a policeman by the mayor.

7. PUBLIC OFFICERS—*Removal—Whether Power Exclusive.*—Whether or not a power of removal is an exclusive power is a question of intent, and much depends upon the precise language used.

8. PUBLIC OFFICERS—*Removal—Whether Power Exclusive—Removal of Policemen by Mayor.*—Thus, the General Assembly is empowered to authorize the mayor of a city to remove a member of the police force, but that is not the limit of its authority. Where the General Assembly fails to extend this authority to the mayor, it may lodge it in some other city official. Even if the Constitution invested the mayor with this power of removal, it would not follow of necessity that this was an exclusive power.

9. PUBLIC OFFICERS—*Removal—Procedure.*—The procedure provided by the Constitution for cases of removal must be followed by the official, or officials, exercising the power. The legislature may not provide methods for removing officers inconsistent with the Constitution.

10. MUNICIPAL CORPORATIONS—*Removal of Policemen—Procedure.*—Section 120 of the Constitution of 1902 does not undertake to prescribe any method of procedure for the removal of members of the police force of a city. The procedure which it prescribes is limited in its terms to city officers.

11. MUNICIPAL CORPORATIONS—*Police—Removal—Charter of City of Richmond.*—The General Assembly, in section 86 of Acts of 1918, p. 181, amending the charter of Richmond, has undertaken to give the chief of police of the city of Richmond the right to remove, or suspend, a policeman, subject to the approval of the director of public safety.

*Held:* That section 86 is not plainly repugnant to the Constitution; on the contrary, it is a valid exercise of legislative authority.

12. STATUTES—*Constitutionality—Presumption in Favor of.*—Unless fully satisfied that an act is repugnant to the Constitution, the courts will sustain it.

13. MUNICIPAL CORPORATIONS—*Policemen—Removal—City of Richmond.*—The power of suspension, which Acts of 1918, p. 181, lodges in the chief of police of the city of Richmond, is not incompatible with the like power lodged in the mayor by section 120 of the Constitution of 1902. The bare grant of power to the mayor to suspend a member of the police department affords no ground for the conclusion that the Constitution thereby intended to exclude the General Assembly from lodging a like power in some other official.

14. MUNICIPAL CORPORATIONS — *Policemen* — *City of Richmond—Tenure of Policemen.*—Acts of 1918, p. 181, confers upon the chief of police of the city of Richmond, subject to the approval of the director of public safety, the right to remove a member of his force. This power is an absolute one, and the tenure of the members of the police force is at will and not during good behavior.

15. MUNICIPAL CORPORATIONS—*Policemen—City of Richmond—Procedure for Removal.*—Enjoying an absolute power of removal, under section 86, Acts of 1918, p. 181, the chief of police of the city of Richmond is not required to proceed by formal trial to effect a removal. He is not required to cite a policeman to appear to answer a charge and specifications, nor to give him an opportunity to produce witnesses in his behalf; nor should such steps, when taken by him, be considered in derogation of his authority, or an enlargement of the rights of defendant. The mere fact that the chief of police afforded the defendant opportunities that the latter was not entitled to demand, as a matter of right, should not divest the former of the power of action afforded by the statute.

Error to a judgment of the Hustings Court, Part II, of city of Richmond, on an application for a writ of mandamus. Mandamus granted. Respondent assigns error.

*Reversed.*

The opinion states the case.

*George Wayne Anderson* and *H. R. Pollard,* for the plaintiff in error.

*Nunnally & Miller* and *L. O. Wendenburg,* for the defendant in error.

SAUNDERS, J., delivered the opinion of the court.

The facts necessary for an intelligent understanding of this case may be briefly stated.

C. A. Sherry, plaintiff in error, is chief of police of the city of Richmond. M. F. Lumpkin, the defendant is a member of the city police force. On June 11, 1919, Lumpkin was suspended from duty by the said Sherry. At or about the time of this suspension, the chief of police filed charges against Lumpkin, and caused to be served upon him a copy of the following paper:

"Officer M. F. Lumpkin,

"City.

"Dear Sir:

"You are hereby summoned to appear at Police Headquarters, Wednesday morning, December 24, 1919, at 10:00 o'clock to answer the following charges now pending against you:

"Charge: Conduct unbecoming an officer and gentleman.

"Specifications: That in violation of the rules and regulations of the police department Officer M. F. Lumpkin did, within the twelve months last past, enter into an agreement to accept and receive from one L. B. Stern the sum of one hundred ($100.00) dollars, more or less, as a consideration for obtaining for him from the police court of this city one trunk, the property of W. T. Herman, the brother-in-law of the said L. B. Stern; the said trunk having been seized on the 23rd day of November, 1918, by the said Officer M. F. Lumpkin and Officer J. A. Waters, when found to contain seven quarts of ardent spirits, which was being transported into this State in violation of the prohibition law, and delivered to the police court of this city on the 19th day of December, 1918; and that in accordance with said agreement the said Officer M. F. Lumpkin did obtain the said trunk for the said L. B. Stern and accept and receive the said sum of one hundred ($100.00) dollars, more or less, for performing such service and appropriate the same to his own use.

"Wit: L. B. Stern, 100 Virginia street.

Ira Stern, 100 Virginia street.

Miss Ether Moseley, 100 Virginia street.

Berkley Goode, 15th and Main streets.

J. J. Crutchfield, police justice.

W. A. Shields, police court.

Col. W. M. Myers, city hall.

Lieut. A. C. Holt.

"You will have present at this time such witnesses as you desire to testify in your behalf.

"C. A. SHERRY,

"Chief of Police."

This suspension of the defendant, Lumpkin, was ordered by the director of public safety of the city of Richmond, and the notice cited, *supra*, was designed to advise the defendant in detail of the nature of the charges preferred, and to give him an opportunity to present his defense through witnesses of his own choosing.

The hearing of the inquiry on the charges and specifications, for reasons that need not be stated in this connection, was postponed from time to time, the day finally set being December 31, 1919. Prior to that date the defendant, Lumpkin, applied to the Honorable E. H. Wells, judge of the Hustings Court, Part II, of the city of Richmond, for a writ of mandamus, praying, first, that he be restored and reinstated as an active member of the said force; second, that the said C. A. Sherry, chief of police as aforesaid, be commanded to refrain from holding himself out as authorized and empowered to suspend and remove the defendant from the said force; and, third, that all proceedings which shall be had in this cause on said charges, marked Exhibit A, be had in conformity with, and according to, the mandate of section 120 of the Constitution of Virginia and the laws in pursuance thereof.

After hearing argument upon this application for a writ of mandamus, the hustings court declined either to re-

strain the chief of police from trying the said Lumpkin, or to order the latter's reinstatement as prayed, but did order that a peremptory writ of mandamus "be issued, to the said C. A. Sherry directed, requiring and compelling him to permit the said M. F. Lumpkin at his trial aforesaid on said charges to summon witnesses in his own behalf, to appear by counsel and have an open and fair trial of all charges preferred against him." To this judgment of the hustings court, upon the petition of C. A. Sherry assigning error, a writ of error was allowed, and a supersedeas awarded, by one of the judges of this court.

The plaintiff in error, the said Sherry, insists that the suspension of the said defendant, and his citation to appear and produce witnesses, were within the scope of his lawful powers, derived directly from the statute laws of Virginia, and were not in contravention of the Constitution. Further, that under existing law, subject to the approval of the director of public safety, the plaintiff in error had the absolute power to suspend, or remove, the defendant. He denies that this absolute power of suspension and removal was abrogated, or in any wise diminished, by his voluntary action in affording to the defendant in error an opportunity to produce witnesses to testify in his behalf upon the charge preferred.

The defendant in error maintains that the mayor of Richmond enjoys the exclusive power to suspend, or remove, a member of the police force, and insists that in a case of removal, reasonable notice must be given to the officer complained of, and a formal trial conducted, with the incidental right to the officer to be heard in person, or by counsel, and to present testimony in his defense. The solution of these conflicting claims requires an examination of the Constitution and laws, respectively, cited and relied upon by the plaintiff in error and the defendant in error.

[1] Section 120 of the Constitution relates to and deals

with the duties and powers of city officers. This section, in part, is as follows:

"The mayor shall see that the duties of the various city officers, members of the police and fire departments, whether elected or appointed, in and for such city, are faithfully observed * *. He shall also have power to suspend such officers, and the members of the police and fire departments, and to remove such officers, and also such members of said departments, when authorized by the General Assembly, for misconduct in office, or neglect of duty to be specified in the order of suspension or removal; but no such removal shall be made without reasonable notice to the officer complained of, and an opportunity afforded him to be heard in person, or by counsel, and to present testimony in his defense. From such order of suspension, or removal, the city officer so suspended, or removed, shall have an appeal of right to the corporation court * * *."

It will be noted that this section gives the mayor of a city the power to suspend *such officers* (that is, the city officers), and the members of the police and fire departments, and the further power to remove such officers, and also the members of said departments, when authorized by the General Assembly. The mayor derives his power to suspend the persons described, and to remove such officers, that is the city officers, directly from the organic law. But this instrument does not give him the power to remove members of the police and fire departments. This power, by the very language of the section, must be derived from the General Assembly.

[2, 3] It is insisted that this section of the Constitution confers upon the General Assembly the power to authorize the mayor to remove a member of the police force. To this view we cannot give our assent. The language used refers to the possible exercise by the General Assembly of a power which it enjoys of right, and which it is competent to set

in motion in the free exercise of legislative discretion. It is not true that this section is a source of power for the General Assembly, or that it directly affords to that body the authority to empower the mayor to remove the members of the police force. Further, it is insisted that not only does this section confer power upon the General Assembly to extend this authority of removal to the mayor, but that this power, so conferred, is the sole power which the General Assembly enjoys in this connection. That body, in its discretion, may or not, so it is contended, exercise this power, but if it declines to afford the authority to the mayor to remove the members of the police force, it may not, then or thereafter, afford this authority to any other official.

The General Assembly possesses all the sovereign powers of a free people not clearly and necessarily taken from it by the Constitution. The language of the section cited, *supra*, is not a grant of power, but a reference merely to the exercise of an existing legislative power, namely, the power of legislative control over the police force of the several cities of the Commonwealth. In this view of the situation, the power of a mayor to remove a policeman, if it exists at all, must be derived from some act, or acts, of the General Assembly, subsequent to the Constitution. There are three acts proper to be cited in this connection, to-wit: section 1033 of the Code (1904), the act of March 4, 1916 (Acts 1916, p. 176), and the act of March 6, 1918 (Acts 1918, p. 180).

[4-6] Section 1033 of the Code is a general act. The acts of 1916 and 1918, respectively, are amendments of the charter of the city of Richmond. Section 1033, *supra*, provides that the mayor shall see that the duties of the various city officers, and members of the police and fire departments, are faithfully performed. It is manifest that the language repeats a distinction already noted between the city officers and the members of the police department. The

distinction is more than nominal; it is a very real one. The officers referred to are city officers, while policemen are State officers. This distinction is established in the case of *Burch v. Hardwicke,* 30 Gratt. (71 Va.) p. 24, 32 Am. Rep. 640, which holds specifically that policemen are State and not city officers. Hence, the right given to the mayor of the city of Lynchburg to remove city officers was not considered to include the right to remove a member of the police department. In the case cited, Staples, J., delivering the opinion of the court, distinguishes very clearly between city officers, such as city engineers, inspectors, surveyors, and others, and the members of the police force, pointing out that in the nature of things the latter are officers of the State. Hence, the express power to remove members of the first class, was not considered to include members of the other. Section 1033, *supra,* provides further that the mayor shall have the power to suspend such officers (that is, by familiar construction, the city officers above referred to), and the members of the police and fire departments, and to remove such officers (again evidently referring to the city officers) for misconduct. It will be noted that this section directly affords the mayor the authority to remove city officers under the conditions prescribed, but omits to include in this grant of power the members of the police force. That this omission was intentional may be readily seen by looking to the next sentence, which provides that "from such order of suspension or removal, the *city officer* so *suspended,* or *removed,* or the member of the police or fire department so suspended, unless," etc., shall have an appeal of right to the corporation court. This general statute, therefore, fails to afford to the mayor of the city of Richmond, or to the mayor of any city of the Commonwealth, the right to remove a member of the police force, nor does it vest that right in any other official. In March, 1916, and again in March, 1918, the

General Assembly amended the charter of the city of Richmond in various particulars. Section eleven of the charter is amended in both acts, but section eleven, as it is found in the acts of 1918, which were effective January 1, 1919, is the present law for the city of Richmond.

The charter act of 1918 consolidated authority and responsibility in the hands of the mayor and six departments, one of these departments being the department of public safety. Subject to the confirmation of the council, the mayor is empowered by this act to appoint a director of public safety. This director is charged with the management and control of the police department, and is given power to appoint a chief, who is removable at his pleasure (see sec. 86). Further, he is authorized to formulate and promulgate rules and regulations for the police force. The chief of police is authorized to appoint the members of the police force, subject to the approval of the director.

Section 86, in part, is as follows: "The terms of the officers and the members of the said force shall be during good behavior and efficiency * * * The chief of police shall be responsible to the said director for the discipline and efficiency of the force * * * Any officer or member of the force may be fined by the chief of police for good cause shown, such fine to be deducted from his pay, or may be removed or suspended, subject to the approval of the said director, from the force or reduced in rank when the same shall be, in the judgment of the chief of police, for the good of the service."

Section eleven of the act of 1918 charges the mayor with the duty of supervising and compelling the performance of duty by all other officers and employees. In order that these duties may be effectively discharged, the mayor is given the power of suspension and removal. The precise language used in this connection is as follows: "He shall have power to suspend any such officers and subordinates,

including the members of the police and fire departments, and may remove such officers and subordinates for misconduct in office," etc. "On the removal or suspension of such officer or officers, the mayor shall report," etc., etc.

This language is substantially the language used in this connection in section 1033 of the Code, and fails to include under the head of officials who may be removed, the members of the police and fire departments. The act of 1918 is the latest evidence of the legislative intent, and the latest exercise of the legislative authority relating to the removal of officials by the mayor of the city of Richmond.

The words "such officers" in section eleven, are considered to refer to city officials, and as the power of suspension is extended in terms to "members of the police department," the omission to use the words, "members of the police department" when the section deals with the power of removal, evidently indicates that the power to remove members of the police department was not intended to be afforded to the mayor by this statute. It has already been pointed out that the bare power to remove city officers would not include policemen, the latter being officers of the State.

[7, 8] A further enquiry in this connection concerns the extent of the legislative authority. Unquestionably the General Assembly is empowered to authorize the mayor to remove a member of the police force, but is that the limit of its authority? Failing to extend this authority to the mayor, may the General Assembly lodge it in some other city official? Even if the Constitution invested the mayor with this power of removal, it would not follow of necessity that this was an exclusive power. For instance, in State v. Adams, 46 La. Ann. 830, 15 So. 490, it was held that "the power given to the courts by the Constitution to remove municipal officers, was not exclusive, and a city charter authorizing the common council to remove record-

ers of the recorders court on impeachment proceedings, was valid." See also 28 Cyc. p. 434. Whether or not a power of removal is an exclusive power, is a question of intent, and much depends upon the precise language used. On this question of exclusive intent, see *McCurdy* v. *Smith*, 107 Va. 759, 60 S. E. 78, and *Lowe* v. *Com'th*, 60 Ky. (3 Metc.) 237.

[9] It is, of course, true that the procedure provided by the Constitution for cases of removal, must be followed by the official, or officials, exercising the power. The legislature may not provide methods for removing officers inconsistent with the Constitution. 28 Cyc., p. 1406.

[10] Section 120 of the Constitution does not undertake to prescribe any method of procedure for the removal of members of the police force. The procedure which it prescribes is limited in terms to city officers. For instance, in the exercise of his power of removal, the mayor, pursuant to the Constitution (sec. 120) is required to give the officer (evidently a city officer) notice before removing him. The words "member of the police department," are not used in this connection. The language of the section is as follows: "* * * but no such removal shall be made without reasonable notice to the *officer* complained of." The word "officer" plainly meaning a "city officer." Further in the sentence next following the words last cited, an appeal of right to the corporation court is afforded to the "city officer." This appeal of right is not given to a member of the police force.

[11] The General Assembly, in section 86 of the act of 1918, has undertaken to give the chief of police of the city of Richmond the right to remove or suspend, a policeman, subject to the approval of the director of public safety. A part of this section cited *supra*, is reproduced in this connection. "The officer or member of the force may be fined by the chief of police for good cause shown, such fine to

be deducted from his pay, or may be removed or suspended, subject to the approval of the said director, from the force or reduced in rank when the same shall be, in the judgment of the chief of police, for the good of the service."

[12] If this act is constitutional, the power which it undertakes to afford is validly conferred. Is there any sufficient reason for holding that this act is repugnant to the Constitution, and therefore void? The act itself is evidence that the General Assembly believed that it could confer this power upon the chief of police, and this court should sustain the action of the General Assembly and make effective the legislative intent, unless it is fully satisfied that the act is repugnant to the Constitution. The principles appropriate in this connection have been repeatedly announced.

In *Burch* v. *Hardwicke, supra,* the court held as follows: "This court has been repeatedly called upon to pronounce legislative enactments void on the ground of their repugnance to the Constitution, and it has always declined to do so, unless this repugnancy is, in its judgment, beyond all reasonable doubt."

In *Ogden* v. *Saunders,* 12 Wheat. 212, 6 L. Ed. 606, cited in Cooley's Constitutional Limitations, the court declared that "it is but a decent respect due to the wisdom, integrity and patriotism of the legislative body by which any law is passed, to presume in favor of its validity until its violation of the Constitution is proved beyond all reasonable doubt."

This court is not satisfied that section 86 is plainly repugnant to the Constitution; on the contrary, it regards the act as a valid exercise of legislative authority. The corollary of this conclusion is that the chief of police is lawfully vested with the power to remove or suspend a member of the police force, subject always to the approval of the director of public safety.

[13] But the question may be asked in this connection, whether the power of suspension, which this statute lodges in the chief of police, is incompatible with the like power lodged in the mayor by the Constitution, or, to change the question somewhat, does the grant of this power to the mayor, by section 120 of the organic act, preclude the General Assembly from granting a like power to the chief of police?

In our view there is no incompatibility. The bare grant of power to the mayor to suspend a member of the police department, affords no ground for the conclusion that the Constitution thereby intended to exclude the General Assembly from lodging a like power in some other official. It is altogether proper that the mayor, as the executive head of the city, should possess the authority of suspension, but the exercise of a like authority by another official is in no wise, in our view, incompatible with good government or the Constitutional intent. There are many obvious, indeed, imperative reasons of public interest why this authority should be confided to the chief of police.

[14, 15] Having reached the conclusion that the statute of 1918 confers upon the chief of police of the city of Richmond, subject to the approval of the director of public safety, the right to remove a member of his force, the next enquiry in due course is into the nature and character of the power conferred. Is this power to remove an absolute power, or, by virtue of the language used, do the members of the police force hold during good behavior and enjoy the right to a formal trial on charges preferred, with the incidental right to produce witnesses in their behalf, and to appear by counsel? The answer to these enquiries will be found in the case of *Smith* v. *Bryan*, 100 Va. 199, 40 S. E. 652. In that case the charter authorized the mayor of the city of Roanoke to appoint the chief of police, and his subordinates, with the further provision that the officers

17

so appointed should hold their respective positions during good behavior, or until they were severally removed by the mayor, or by a three-fifths vote of the council after notice to and failure of the mayor to act, after having been requested to do so by the council. Whittle, J., delivering the opinion of the court, interpreted the section cited, *supra,* as follows: "This section, in its entirety, imports an official tenure during good behavior, but subject nevertheless to the limitation that the mayor, or city council (should the former fail to act on request), shall have the absolute power of removal. This practically constitutes the tenure, *quoad* the authorities named, tenure at will, but forbids, as an implied incident to the higher tenure, the removal of a policeman by any other authorities than those designated, except for cause." 100 Va. p. 203, 40 S. E. 653.

Apart from the weighty effect of the decision cited, it is evident that under section 86 of the act of 1918, *quoad* the chief of police of the city of Richmond, provided his action is approved by the director, the tenure of the members of the police force is at will. By the express terms of section 86 it is provided that the chief of police, subject always to the approval of the director, may remove a policeman whenever the same shall be, in the judgment of the chief, for the good of the service. Enjoying this absolute power, the chief of police is not required to proceed by formal trial to effect a removal. It is true that in the instant case the chief of police issued a citation to the defendant, Lumpkin, to appear on a day, and at a place named, to answer the charge and specifications set out in the citation. Further, the defendant was given the opportunity to produce at the hearing "such witnesses as he might desire to testify in his behalf." In the view of the learned judge of the hustings court, this action of the chief of police in preferring a specific charge against the defendant, in giving him the opportunity to summon witnesses,

and in fixing a date for the trial on this charge, divested the chief of his absolute power of removal, and entitled the defendant to demand all the rights incident to a formal trial. In this view of the learned judge this court cannot concur. Section 120 of the Constitution provides the procedure to be followed in a case of removal of a city officer by the mayor of the city. But this is not a case in which the mayor is taking action nor is the officer proceeded against a city officer. The instant case is an exercise of authority by the chief of police, pursuant to an act of the General Assembly fixing his powers, and the tenure of the members of his force. He was not required by this statute to take the steps cited, *supra,* nor should these steps when taken, be considered in derogation of his authority, or an enlargement of the rights of the defendant. The mere fact that the chief of police afforded the defendant opportunities that the latter was not entitled to demand, as a matter of right, should not divest the former of the power of action afforded by the statute. The steps taken were in aid of the defendant, by affording him precise knowledge of the charges preferred, and extending to him an opportunity to appear with his witnesses, and be heard. But the voluntary action of the chief of police in respect to the proceedings taken, and the opportunities which he afforded to the defendant did not divest that official of the authority expressly lodged in him by the statute, or afford to the defendant rights which he was not entitled to demand either under the Constitution or the statute.

For the foregoing reasons, we are of opinion that the judgment of the Hustings Court, Part II, of the city of Richmond should be reversed, and the petition of the defendant in error for a writ of mandamus be dismissed.

*Reversed.*