WILLIE H. MANN V. CITY OF LYNCHBURG, OR COMMON-
WEALTH OF VIRGINIA.

March 17, 1921.

1. WORKMEN'S COMPENSATION ACT—*Policeman—Whether City or
State is Employer of Policeman.*—Upon a claim under the
workmen's compensation act (Acts 1918, p. 637), on behalf
of a widow and children of a policeman, killed in the line of his
duty, against the city of Lynchburg, or the Commonwealth of
Virginia, where both defendants conceded that the policeman
was an employee either of the city or the State, within the
meaning of the act, eliminating any consideration of the stat-
utory definition of an employee, the city of Lynchburg, as the
party "using the services for pay" would be liable for the
compensation conceded to be due from one or the other of the
parties.

2. WORKMEN'S COMPENSATION ACT—*Policeman—Whether City or
State is Employer of Policeman—Effect of Concession of Coun-
sel—Appeal and Error—Determination of Question Conceded
in Counsel's Briefs.*—Upon a claim under the workman's com-
pensation act (Acts 1918, p. 637), on behalf of a widow and
children of a policeman, killed in the line of his duty, against
the city of Lynchburg, or the Commonwealth of Virginia,
where both defendants conceded that the policeman was an
employee either of the city or the State, within the meaning of
the act, if the question had been between private persons or cor-
porations, the Supreme Court of Appeals might have stopped
where the briefs of counsel stopped, and refrained from passing
upon the question as to whether either of the defendants were
liable for the compensation claimed. But as the question was
one of a public nature, the court felt that it should answer
fully as to whether the policeman was an employee within the
statute.

3. WORKMEN'S COMPENSATION ACT—*"Employee"—State—Municipal
Corporation.*—While it is plainly provided in the act that the
term "employers" shall include the State and any municipal

corporations within the State," it by no means follows that all persons in the service of the State, or of the municipal corporations therein, are entitled to the benefit of the act; for example, the Governor, Attorney-General, members of the State Corporation Commission, judges, mayors, and city managers are all in a sense servants of the State or city, but the act plainly does not extend to any of these persons, and they do not fall within the definition of the statute.

4. WORKMEN'S COMPENSATION ACT—*General Rule of Construction.*——The workmen's compensation act (Acts 1918, p. 637) is to be liberally construed to the end that its wise and humane purpose may be advanced; but its provisions cannot be extended by construction, so as to cover persons or occupations not within its scope and intent.

5. WORKMEN'S COMPENSATION ACT—*Purpose of the Act—Relation of Master and Servant.*—The workmen's compensation act (Acts 1918, p. 637), as its title shows, relates to industrial accidents, and its well known purpose was to substitute for the unsatisfactory common law remedies a speedier and simpler and more equitable form of relief for personal injuries sustained by persons engaged in hazardous occupations. It would seem clear from the history and purposes and general provisions of the act that the legislature did not have in mind as beneficiaries any other persons than such as are commonly understood as falling within a contractual relationship of master and servant.

6. PUBLIC OFFICERS—*Policeman.*—A policeman is a public officer.

7. WORKMEN'S COMPENSATION ACT—*Public Officers.*—The workmen's compensation act (Acts 1918, p. 637) is limited to persons in service of the State or city under a contract of hire. A public officer does not perform his duties under contract, express or implied, but by virtue of the law creating the office. His compensation is a matter of statute or ordinance, and does not depend upon the amount or value of the services performed, but is incident to the office.

8. WORKMEN'S COMPENSATION ACT—*Policeman.*—The case of a city policeman does not fall within the reason and purpose or the language of the workmen's compensation act (Acts 1918, p. 637); consequently neither the city nor the Commonwealth is liable under that act for compensation to the widow and children of a policeman killed in the line of his duty.

Questions certified from the Industrial Commission, pursuant to section 61 of the workmen's compensation act (Acts 1918, p. 637). Claimant denied compensation.

N. C. *Manson*, for the City of Lynchburg.

*Jno. R. Saunders, Attorney-General,* and *J. D. Hank, Jr., Assistant Attorney-General,* for the Commonwealth.

*J. A. Massie, Amicus Curiae.*

PER CURIAM.

The Industrial Commission of Virginia, pursuant to the provision of section 61 of the workmen's compensation act (Acts 1918, p. 637), has certified to this court for its decision certain questions of law arising in the above-entitled proceeding.

We quote as follows from the certificate of the commission:

"The claimant, Willie H. Mann, in her own right and in behalf of her two infant children, Bernard Mann, of the age of thirteen years, and Arthur Mann, of the age of ten years, has filed her application for hearing before the Industrial Commission of Virginia, setting up the claim of herself and infant children as dependents of her husband, Lee Arthur Mann, a policeman of the city of Lynchburg, who was killed in the line of duty on the 25th day of March, 1920.

"In said application claimant asks that the compensation be paid as provided by the statute, either by the city of Lynchburg or the Commonwealth of Virginia, as liability under the statute may be determined.

"The facts of the case may best be stated in the agreed statement of facts, which is in the words and figures following, to-wit:

" '*Agreed Statement of Facts.*

" 'I.   The claimant, Willie H. Mann, was the lawful wife of Lee Arthur Mann, who died in the city of Lynchburg, Virginia, on the 26th day of March, 1920, from the effects

of a pistol shot wound in the head inflicted by John H. Williams (colored) on the night of the 25th of March, 1920.

" 'II.   The deceased, Lee Arthur Mann, left surviving him as his only heirs at law and distributees, his widow, the aforesaid Willie H. Mann, and their two children, to-wit: Bernard Mann, who was born on the 9th day of December, 1907, and is, therefore, aged twelve years, and Arthur Mann, who was born on the 12th day of November, 1910, and who is, therefore, aged nine years.   The said widow and children of the deceased were entirely dependent upon him for support.

" 'III.   The deceased was in every respect a duly and lawfully appointed, qualified and constituted policeman for the city of Lynchburg, Virginia.

" 'IV.   The deceased in the performance of his duty as a policeman of the city of Lynchburg, along with a fellow policeman of the said city, sought on the night of the 25th of March, 1920, to place the aforesaid John H. Williams under arrest, upon a charge of carrying a concealed weapon and upon a suspicion, which has since been confirmed by his own confession, that he was wanted in the State of South Carolina for the crime of murder.   The said John H. Williams in resisting the said arrest inflicted a pistol shot wound upon the deceased, from the effects of which the latter died on the following day.

" 'V.   The arrest of the said John H. Williams sought to be made by the deceased and his fellow officer was in every respect a lawful arrest, made in a lawful and proper manner by proper officers.

" 'VI.   The average weekly wage was $26.25, and he was paid monthly by the city of Lynchburg.

" 'VII.   The method of appointing policemen for the city of Lynchburg, and which was followed in the appointment of the deceased, is set forth in the charter of the city of Lynchburg.   (See Acts of the General Assembly 1918, page

238, and special section 10 of Chapter VI of the charter on pages 251 and 252 of said Acts.)

" 'VIII.  The duties of the members of the police force of the city of Lynchburg, including those of the deceased, are prescribed by law and includes the enforcement within the said city of the laws of the Commonwealth of Virginia and the ordinances of the city of Lynchburg, and the detention and arrest of offenders thereof.   (See section 2991, Code of Virginia for 1919, section 10 of chapter VI of the charter of Lynchburg, *supra.*)   The members of the Lynchburg police force were also made conservators of the peace under the charter of the city of Lynchburg. (See section 4798 of Code of Virginia, 1919.)

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"The city of Lynchburg contends that the killed policeman was not 'the agent, employee or servant of the city of Lynchburg, but was 'the agent, employee or servant' of the State of Virginia, and that under the terms of the workmen's compansation act the State is the true employer and is alone liable to pay the compensation stipulated to be paid under the terms of the act to the claimants as dependents of the said Lee Arthur Mann.

"The contention of the State is that the city of Lynchburg is by the clear intendment of the workmen's compensation act alone liable, as the employer of the killed policeman, to pay the compensation therein provided to the said dependents.

"The questions of law which are here respectfully certified to this honorable court for its decision and determination are:

"I.   Was the city of Lynchburg the employer of the policeman, Lee Arthur Mann, at the time of his death, and is it, as such, liable to pay the compensation to the claimants in the act provided; or

"II.   Was the Commonwealth of Virginia the employer at said time, and as such liable to pay said compensation?"

[1] From the briefs of counsel for the city of Lynchburg and the Commonwealth of Virginia it appears to be agreed that no question is to be raised by either of the defendants as to the right of the claimant, Willie H. Mann, to recover from one or the other. The necessary result is that for the purposes of this case both defendants concede that Policeman Mann was an employee either of the city or the State, within the meaning of the statute.. Upon such concession, eliminating any consideration of the statutory definition of an employee, we answer that in our opinion, as between the two defendants, the city of Lynchburg, as the party "using the services for pay," would be liable for the compensation conceded to be due from one or the other of the parties.

[2] If this were a question between private persons or. corporations, we might well stop where the briefs of counsel stop, and refrain from passing upon the question as to whether either of the defendants are liable for the compensation claimed. The question, however, is one of a public nature, and we feel that we should answer it as fully as if it had been submitted to us without the limitation above indicated.

Section 2 of the act, so far as pertinent, is as follows:

"(a) 'Employers' shall include the State and any municipal corporation within the State or any political division thereof, and any individual, firm, association or corporation, or the receiver or trustee of the same, or the legal representative of a deceased employer, using the service of another for pay. If the employer is insured it shall include his insurer so far as applicable.

"(b) 'Employee' shall include every person, including a minor, in the service of another under any contract of hire or apprenticeship, written or implied, except one whose employment is not in the usual course of the trade, business occupation or profession of the employer. Any reference

to an employee who has been injured shall, when the employee is dead, include also his legal representatives, dependents and other persons to whom compensation may be payable."

[3]    While it is plainly provided in the act that the term " 'employers' shall include the State and any municipal corporation within the State," it by no means follows that all persons in the service of the State, or of the municipal corporations therein, are entitled to the benefit of the act; for example, the Governor, Attorney-General, members of the State Corporation Commission, judges, mayors, and city managers are all in a sense servants of the State or city, but the act plainly does not extend to any of these persons, and they do not fall within the definition of the statute, which provides that " 'employee' shall include every person, including a minor, in the service of another *under any contract of hire or apprenticeship, written or implied.*"

[4]    The statute is to be liberally construed to the end that its wise and humane purpose may be advanced; but we cannot extend its provisions by construction so as to cover persons or occupations not within its scope and intent.

[5]    The act, as its title shows, relates to industrial accidents, and its well known purpose was to substitute for the unsatisfactory common law remedies a speedier and simpler and more equitable form of relief for personal injuries sustained by persons engaged in hazardous occupations. It would seem clear from the history and purposes and general provisions of the act that the legislature did not have in mind as beneficiaries any other persons than such as are commonly understood as falling within a contractual relationship of master and servant. It often happens that cities and towns employ large forces of men in connection with municipal undertakings, such as the construction of sewers, the building of streets, the operation of rock quarries and other similar and more or less hazardous

occupations akin to those undertaken by individuals and industrial corporations. The legislature undertook to make an improvement upon the remedies hitherto existing in cases of employees receiving personal injuries, and who might or might not, according to the particular facts of the case, have a cause of action against the employer on the ground of negligence or breach of duty, and manifestly the idea was that this remedy should be provided for those who theretofore stood in such a relationship as that there might be in cases of negligence a liability on the employer. (*Griswold* v. *Wichita,* 99 Kan. 502, 162 Pac. 276, L. R. A. 1918F, 187, 189, Ann. Cas. 1917D, 31.) The case of a city policeman does not, as we think, fall within the reason and purpose of the act; and this conclusion is greatly strengthened by the language which the legislature used in its enactment.

[6, 7]    It is no longer open to question in this State that a policeman is a public officer. See *Burch* v. *Hardwick,* 30 Gratt. (71 Va.) 24, 32 Am. Rep. 640; *Smith* v. *Bryan,* 100 Va. 199; 40 S. E. 652; *Sherry* v. *Lumpkin,* 127 Va. 116, 102 S. E. 658. And this is the holding generally in other States. See *Blynn* v. *Pontiac,* 185 Mich. 35, 151 N. W. 681, 683; *Griswold* v. *Wichita, supra.* The act in question, as we have seen, is limited to persons in service of the State or city *under a contract of hire.* A public officer does not perform his duties under contract, express or implied, but by virtue of the law creating the office. His compensation is a matter of statute or ordinance, and does not depend upon the amount or value of the service performed, but is incident to the office. Unlike an employee working under contract, an officer acquires no vested right to have the office continued during the time for which he is elected or appointed, since the authority creating the office may abolish the same during the term of the incumbent, or change the compensation and the duties to be performed. The following au-

thorities may be cited as sufficient in support of the foregoing propositions: *Booker* v. *Donohue*, 95 Va. 359, 363; 28 S. E. 584; *Nichols* v. *MacLean*, 101 N. Y. 526, 533, 75 N. E. 347, 54 Am. Rep. 730; Mecham on Public Officers, sections 463, 855; *U. S.* v. *Hartwell*, 6 Wall. (U. S.) 385, 393, 18 L. Ed. 830; *Hall* v. *Wisconsin*, 103 U. S. 5, 26 L. Ed. 302.

While it is true with respect to the decided cases in other States which have dealt with a similar question, that most of them have turned upon the peculiar language of the local statute, and therefore cannot be said to be of any very great assistance in the construction of the Virginia compensation act, the case of *Sibley* v. *State*, 89 Conn. 682, 96 Atl. 161, L. R. A. 1916C, 1087, is so pertinent in its reasoning that we feel justified in quoting from it at length. That was a case in which the Supreme Court of the State of Connecticut held that a sheriff was not an employee of the State within the operation of the workmen's compensation act, which rendered the State liable for injuries to its employees, but defined an employee as any person who has entered into or works under contract of service with an employer. The commissioner held otherwise, and the Connecticut court in reversing that finding said in part:

"That the injury which caused Sheriff Sibley's death arose out of and in the course of his employment so as to entitle him to compensation, provided he was an employee of the State within the meaning of the act, has not been questioned before us. The respondent's claim is that according to the definition of the word 'employee,' given in section 43 of part B of the act, Sibley was not an employee of the State.

"Part B, section 43, gives the following definition of employee and employer: 'Employee' shall mean any person who has entered into or works under any contract of service or apprenticeship with an employer. 'Employer' shall mean any natural person, corporation, firm, partner-

ship or joint stock association, the State, and any public corporation within the State using the services of another for pay; it includes also the legal representative of any such 'employer.'

"The commissioner held that the sheriff, while in the performance of his duties as such, was an employee of the State within the meaning of the statute. As the statute, by defining 'employee' leaves no question as to its meaning, the commissioner must have held, and his memorandum of decision shows that he did hold, that the sheriff was working under a contract with the State while performing the duties of his office. In this he was in error.

"*  *  *  The office of sheriff is thus a public office as defined by us in *State ex rel. Stage* v. *Mackie,* 82 Conn. 398, 401, 26 L. R. A. (N. S.) 660, 74 Atl. 759, and numerous other cases, and by, so far as we know, all courts and text-writers. The incumbent of such an office holds it as a trust from the State not resting upon contract. *State ex rel. Rylands* v. *Pinkerman,* 63 Conn. 176, 182, 22 L. R. A. 653, 28 Atl. 110. He is a preserver of the public peace; he is not the hired servant of a master; no contract relation exists between him and the community or State. *Farrell* v. *Bridgeport,* 45 Conn. 101, 195. In *Seymour* v. *Over-River School Dist.,* 53 Conn. 502, 509, 3 Atl. 552, as showing that a teacher in a school district is not a public officer, it was said: 'He is not usually elected or appointed, but is employed—contracted with.'

"Mecham, Public Officers, sec. 855, 856, says: "The relation between an officer and the public is not the creature of contract, nor is the office itself a contract. So his right to compensation is not the creature of a contract. It exists, if it exists at all, as the creation of the law, and when it so exists it belongs to him, not by force of any contract, but because the law attaches it to the office.' *  *  *  Unless. *  *  *  compensation is by law attached to the office none can be recovered.'

"Compensation to a public officer is a matter of statute, and not of contract, and it does not depend upon the amount or value of the services performed, but is incidental to the office. *State ex rel. Evans* v. *Gordon,* 245 Mo. 12, 149 S. W. 638, 641; *Leonard* v. *Terre Haute,* 48 Ind. App. 104, 93 N. E. 872. A salary is attached to the office to enable the incumbent the better to perform the duties of his office. *State ex rel. Atty. Gen.* v. *Hawkins,* 44 Ohio St. 96, 110, 5 N. E. 228. It is the substantially universal rule that a person who is elected or appointed to a public office to which no salary or compensation is attached by law can recover no compensation for his services, although he qualifies and performs its duties, and for the reason that no contractual relation exists between him and the governmental agency by whom he is elected or appointed.

"But it is urged in behalf of the claimant that the statute attaching a salary to the office of sheriff raises an obligation or duty on the part of the State to pay it, and that, if it refuses to pay, the law will give the sheriff an action *quasi ex contractu* upon the obligation, and that the officer was thus under a *quasi* contract of service with the State. If, for the argument's sake this were to be conceded, it would not advance the claimant's cause. A *quasi* contract is no contract. Mains, Ancient Law (3d Am. ed.), quoted with approval in Keener's Law of Quasi Contracts, p. 6. The term '*quasi* contract' describes a situation where there is an obligation or duty arising by law upon which the same remedy is given as would be given if the obligation or duty arose out of contract. The term itself implies that the obligation or duty is not a contractual one. As we said in *Powers* v. *Hotel Bond Co.,* 89 Conn. 143, 145, 93 Atl. 245, the workmen's compensation act is founded upon the theory of a contract existing between workman and employer. The contract may be established by evidence showing that an express contract was entered into by the parties or by evidence of facts and circumstances from which as an in-

ference of fact it can legally be found that a contract of employment existed between them. There must be a real contract of employment either expressed or implied, or there is no employee within the definition and meaning of the statute.

"It is said in behalf of the claimant that the compensation act must be construed so as to be consistent with itself, and that as the definition of 'employer' specifically says that it shall mean the State when using the services of another for pay, the definition of 'employee' should be so construed as to be harmonious, and not contrary to the definition of 'employer.' And it is said that as an employer presupposes an employee and *vice varsa,* and as the State was using the services of Sheriff Sibley for pay, it was his employer and the sheriff its employee. *The argument is more ingenious than convincing. If, as it assumes, the State used the services of the sheriff for pay when he was exercising for the public good a portion of the sovereign power of the State as a public officer and received the salary attached to the office, and if this made him an employee of the State, he was not, as we have shown, an employee under a contract.* But we think he was not an employee, and that the State was not using his services for pay. He was performing a duty which he owed to the State, and the salary which was attached to the office was not given in payment for his services, but, as is said concerning public officers in *State ex rel Atty. Gen.* v. *Hawkins, supra,* to enable him to perform his statutory duty as one of the public functionaries of the State exercising a portion of its sovereign powers. *The State, like public municipal corporations and private firms and individuals, may be and is a large employer of persons by contract.* The State and the person or persons whom it employs to care for the lawns around the capitol are as much employer and employee as are the householder and the person who is employed by him to mow his lawns;

but no one would say that the Governor or other public officers who exercise the sovereign powers of the State and receive as such officers the salary attached by law to their offices are mere employees of the State. While exercising those powers, they represent the State. The office is a trust, and not an employment; the salary attached is for the maintenance of the office, and not a payment for the incumbent's services." (Italics added.)

The case of *McCarl* v. *Borough of Houston,* 263 Pa. 1, 106 Atl. 104, deals with the case of a policeman under a statute which is somewhat similar in its provisions to the Virginia statute, and reached a conclusion different from that reached in the *Sibley Case* and approved by us in the instant case. In the *McCarl Case,* however, the statute, involved did not use the expression, "contract of hire," nor as we think, any exactly equivalent language in the definition of the term "employee," but declared that the term should be treated as "synonymous with servant, and include all natural persons who perform services for another for valuable consideration."

The decision in the *McCarl Case* seems to us to write into the statute terms which are not there, and to bring into the operation of the act a class of persons for whose benefit it was not intended. Of course, as already pointed out above, there is a sense in which every officer is a servant, and in which every officer performs services for pay, but this is no more true of policemen than of any of the other officers of the State or municipality. If any such officers are to be included within the provisions of the statute, the amendment should be made by the legislature and not by the tribunals called upon to construe and enforce the law.

[8] It follows that we are of opinion that neither the city of Lynchburg nor the State of Virginia can lawfully be required to pay the compensation claimed in this proceeding.