# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

ROY C. CROWDER AND BITUMINOUS CASUALTY CORP. v. JOHN
G. HAYMAKER.

March 14, 1935.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and
Browning, JJ.

The opinion states the case.

*Bandy & Bandy* and *F. A. Lewey,* for the appellants.

*Hall, Buford & Leftwich,* for the appellee.

HOLT, J., delivered the opinion of the court.

This is an appeal from a judgment of the Industrial Commission of Virginia. John G. Haymaker, claimant, was in-

jured while working in a coal mine. By an accidental explosion of dynamite he has been blinded in one eye and vision in the other is almost destroyed. The Commission was of the opinion that this injury arose out of and in the course of his employment by Roy C. Crowder (his employer), and has found accordingly, Commissioner Nickels dissenting. The judgment is against Crowder as employer and the Bituminous Casualty Company as insurer.

If we accept as true complainant's version of all disputed facts, and as true evidence for the employer and insurance carrier on matters not in dispute, this appears: Crowder was the lessee of certain coal lands in Botetourt county, owned by the Virginia Mineral Corporation of New York. To it he paid twenty-five cents a ton royalty for coal mined by him. In the latter part of 1932 he was conducting a small mining operation on this leased land. Haymaker and one George Huffman sought from him employment there. He had no place for them but told them that they might work an abandoned near-by mine which had not been worked for many years and which he had never worked. They took this mine as they found it and were to furnish their own explosives, caps, fuses, etc. Crowder, on his part, agreed to furnish shovels, picks, etc., and was to pay them for coal mined and delivered on the platform at the mine's mouth from $2 to $2.50 a ton, the price within these limits to be governed by the market price of coal. There was no limit put upon the duration of this operation or the quantity of production and no reference was made to timbering the shaft or to other safety devices. In other words, these men took the mine as they found it. Haymaker said that he and Huffman operated it in partnership and divided receipts equally. Later they associated with them one Woodrow Gusler, and while he was working shared equally with him their net receipts, each man taking one-third.

Crowder, who was, as we have seen, working a near-by mine, visited the Haymaker and Huffman operation from time to time, and doubtless gave them the benefit of his advice; but it nowhere appears that he undertook to assert

control. This situation continued until the date of the accident which was in August, 1933.

If Crowder was an employer within the meaning of the Workmen's Compensation Law, he is liable and the judgment of the Commission must stand. If Haymaker and Huffman were independent contractors, then he is not.

In *Mann* v. *Lynchburg*, 129 Va. 453, 106 S. E. 371, 373, this court said: "The statute is to be liberally construed to the end that its wise and humane purpose may be advanced; but we cannot extend its provision by construction so as to cover persons or occupations not within its scope and intent.

"The act, as its title shows, relates to industrial accidents, and its well known purpose was to substitute for the unsatisfactory common-law remedies a speedier and simpler and more equitable form of relief for personal injuries sustained by persons engaged in hazardous occupations. It would seem clear from the history and purposes and general provisions of the act that the legislature did not have in mind as beneficiaries any other persons than such as are commonly understood as falling within a contractual relationship of master and servant." *Board of Supervisors* v. *Lucas,* 142 Va. 84, 128 S. E. 574.

The Workmen's Compensation Law does not undertake to change, as between themselves, the rights of owners and independent contractors. This statute leaves that relationship as it was at common law and we must look to it in determining who is master and who is servant.

The rule which we have cited with approval in *Baker* v. *Nussman,* 152 Va. 293, 147 S. E. 246, 249, is thus stated: "In the law of master and servant the principles of the common law determining when this relationship exists, are well settled. At common law, upon the question of whether the relationship of master and servant exists, there are four elements which are considered: (1) Selection and engagement of the servant; (2) payment of wages; (3) power of dismissal; and (4) the power of control of the servant's action. Roberts & Wallace, Employers' Liability (4th Ed.), page 78.

"But, as the last cited author says, the first, second and third of these elements are not essential to the relationship (*Idem.*, pages 79-82). The 'power of control' is the most significant element bearing on the question, in the opinion of this author, gathered by him from the authorities. (*Idem.*, pages 85, 88, 89. See also note 37 L. R. A., pages 38-43.) As said in the case of *Standard Oil Co.* v. *Anderson*, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480, 'In many of the cases the power of substitution or discharge, the payment of wages, and the circumstances bearing upon the relation, are dwelt upon. They, however, are not the ultimate facts, but only those more or less useful in determining whose is the work and where is the power of control.' Many of the authorities emphasize the importance of locating in what person resides the power of control, as a test for ascertaining whether one occupies the relationship of master to another."

The ordinary test is this: "Who has the power to control and direct the servants in the performance of their work?" *Standard Oil Co.* v. *Anderson, supra.*

The manner of payment for services is an element to be considered and certainly servants may be paid for piece work. A ditch-digger who undertakes to dig a drain for so much a yard does not cease to be a servant, nor does a miner who is paid so much for each carload of coal produced. *McKinstry* v. *Guy Coal Co.*, 116 Kan. 192, 225 P. 743, 38 A. L. R. 837. It is said that case is "on all fours" with this in judgment. There the plaintiff furnished his own tools, powder, fuses, etc., but he was working in a mine which the defendant was "operating." Undoubtedly if Crowder was operating this mine he is liable. But he was not. He had opened and was working another mine at which Haymaker sought employment. We have seen that there was no place for him in it. Employment was refused but he was told that he and his friend, Huffman, might themselves open up one which had been abandoned and which Crowder had never operated, and this they did, as Haymaker says, in partnership.

In Jaggard on Torts, section 73, the same principle is restated: "An independent contractor is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result." It is also cited with approval in *Franklin Coal & Coke Co.* v. *Industrial Commission,* 296 Ill. 329, 129 N. E. 811, where it is said that the fact that payment may be made by the piece, job, day or hour, is not necessarily controlling. It is but a fact to be considered.

Sometimes it is said that the test is that the contractor must do a definite piece of work. That is to say, if he agrees to haul timber for a certain price, he must agree to haul all of the timber on a given tract of land. But manifestly this test cannot apply to a coal mine. No one could in reason be expected to contract to mine all of the coal there, and so if this were the test no one could be an independent contractor in such an operation.

Crowder had no control whatever over Haymaker. He came and went at pleasure. He and his partner opened up this mine free from the owner's management or control. Their methods of work were their own. In such circumstances the relationship of master and servant could not exist. A servant must be subject to some measure of control. If not, he is not a servant. One who is a servant must have a master and one who is a master must have a servant.

It is true that Haymaker said that Crowder told him he was protected by insurance. Crowder said that he told him that his men were protected by insurance. But if Haymaker was not a servant this statement would not bind even if made.

It is also said that Crowder directed that Haymaker be taken to a hospital in Roanoke. That act was but a manifestation of common humanity. He would have been charged with heartlessness had he shown no interest.

For reasons stated the judgment of the Industrial Commission should be reversed, and it is so ordered.

*Reversed.*