## CIRCUIT COURT OF THE CITY OF RICHMOND

John E. Crews

    v.

Richmond Newspaper, Inc.

December 10, 1987

Case No. LK1294-4

By JUDGE RANDALL G. JOHNSON

Plaintiff filed this action to recover damages sustained in a fall which he alleges occurred when his fee became entangled in a plastic band or strap of the kind used to bundle newspapers and other items.

Count I of the motion for judgment alleged that Richmond Newspapers was negligent in that the strap "had been negligently, carelessly, and recklessly left in the area [of plaintiff's fall] by agents, servants, and employees of the defendant." Count II alleged that the straps used by defendant "were unreasonably dangerous for their intended use and, in the condition in which they were negligently left in the area where plaintiff fell, they constituted a dangerous instrumentality." The case was tried to a jury on November 24 and 25, 1987. At the close of plaintiff's case-in-chief, defendant moved to strike plaintiff's evidence as to both counts of the motion for judgment on the grounds, *inter alia*, that (1) the evidence was insufficient to present a jury question as to whether the strap which caused plaintiff's fall was ever owned or used by Richmond Newspapers, Inc.; (2) even if the strap had been shown to belong to Richmond

Newspapers, there was no evidence to show that any of plaintiff's employees were guilty of negligence proximately causing plaintiff's fall; and (3) even if it could be inferred that the strap was negligently discarded by a Richmond Newspaper carrier, and that such negligence did proximately cause plaintiff's injuries, such carrier is, as a matter of law, an independent contractor for whose negligence defendant is not liable. In addition, defendant moved to strike the evidence with regard to Count II on the ground that no evidence was presented to show that the straps used by defendant were unreasonably dangerous for their intended use, that is, to bundle newspapers. The court agreed that no evidence was presented with regard to plaintiff's dangerous instrumentality theory, and accordingly granted defendant's motion to strike in that regard. The remainder of defendant's motion, however, was denied. Defendant then presented its case, after which plaintiff put on rebuttal evidence.

At the close of all the evidence, defendant renewed its option to strike on the grounds previously relied upon, which motion was taken under advisement. After instructions and closing arguments, the case was submitted to the jury, which returned a verdict for plaintiff for $50,000. Defendant moved to set the verdict aside and enter final judgment for defendant, again on the grounds previously relied upon, and on the additional ground that immediately prior to retiring to reach a verdict, one of the jurors asked the court if the jury was "also supposed to determine how much plaintiff should get," or words to that effect. That motion was also taken under advisement.[1]

---

[1] Because of the court's decision with regard to the three grounds set out above, the propriety of the juror's question need not be addressed. The court has also received a pleading from defendant titled "Amendment to Motion to Set Aside Jury Verdict," which asserts as an additional reason to set aside the verdict the fact that the jury was allowed to consider whether the person who allegedly discarded the strap was an employee or an independent contractor when, according to defendant, that question is one of law and not fat. The court feels that this "additional" ground is identical to one of the grounds already relied upon. Therefore, it will not be addressed separately.

On June 25, 1984, at approximately 9:00 a.m., plaintiff was walking east through the intersection of Cary Street and the Boulevard in the City of Richmond. As he neared the east curb, he fell and severely injured his right knee. According to the testimony of plaintiff and Wilbert King, who was walking in the same direction but some distance behind, plaintiff's fall was caused, as previously indicated, by his feet becoming entangled in the plastic strap. Both men also testified that the strap was still wrapped around plaintiff's ankles as he lay on the ground, and that there were three or four other straps along the curb. The investigating officer testified that when he arrived, plaintiff was holding the strap which plaintiff says caused his fall. The officer also verified the fact that other straps were in the area. Plaintiff was taken to the hospital where he was admitted and treated. The evidence is clear that his injuries were severe and that they were caused by his fall.

At this point, two additional observations must be made. First, while plaintiff, King, and Officer Sparrow all testified that immediately after the accident, plaintiff was either holding the strap which caused his fall or that it was still wrapped around his ankles, no one now knows what happened to it. It was not submitted at trial. Instead, a different strap was introduced. Plaintiff, King, and Officer Sparrow all testified that the strap introduced at trial "looks just like" or is at least "similar to" the one that tripped plaintiff. Moreover, Oscar Meyers, defendant's superintendent in charge of preparing defendant's newspapers for delivery, when shown the strap introduced at trial, testified that it was a strap used by defendant.

Second, there was no testimony as to how the strap which tripped plaintiff came to be in the street; that is, whether it was thrown there by a carrier, blown there by the wind, fell off a truck, or got there some other way. There was evidence, however, that the location of plaintiff's fall was near a "drop-site" for defendant's newspapers; that is, a place where bundled papers are left by defendant's trucks for the carrier. There was also evidence that a newspaper vending machine owned by defendant was located on the southwest corner of the

subject intersection.[2] With the above facts in mind, I now turn to a consideration of defendant's motions.

The first two grounds of defendant's motions are related. In essence, defendant argues that since there was no direct evidence that the particular straps which caused plaintiff's fall belonged to Richmond Newspapers, or that anyone associated with Richmond Newspapers was responsible for the strap being where it was, no jury question could exist as to those issues. In support of its argument, particularly on the issue of ownership of the strap, defendant cites the testimony of J. Marsicano, the area distributor for Signode Corporation, which supplies the bundling straps used by defendant. According to Marsicano, defendant is only one of many customers who purchase and make use of Signode straps in the Richmond area. Among those other customers are at least one other newspaper company, magazine publishers, a corrugated box manufacturing company and two or more meat and poultry producers. In all, marsicano stated that at least fifteen customers other than defendant purchase Signode straps from him. He further testified that each of those customers purchase straps identical to those purchased by defendant, and that once used, it is impossible to tell who had purchased a particular strap. In addition, Marsicano testified that Signode is only one of several manufacturers of plastic straps, and that other manufacturers also sell to customers in and around Richmond. According to Marsicano, differences in Signode's straps and those of other manufacturers are indiscernible to the naked eye and can only be noted by intricate measurement or chemical analysis. These facts, according to defendant, raise such a strong possibility that the strap which caused plaintiff's fall belonged to someone other than defendant, that a jury could find defendant liable only by engaging in improper speculation.

To counter this argument, plaintiff points to the circumstantial evidence referred to previously. Specifically, plaintiff cites the fact that plaintiff's fall occurred in an area "near" one of defendant's drop-sites, and the fact that one of defendant's vending boxes was located

---

[2] Plaintiff's fall occurred a few feet from the southeast intersection.

across the street. In addition, defendant cites Marsicano's testimony that even though defendant is only one of several of Signode's customers, it purchases 20% of the strapping sold by Signode in the Richmond area. Finally, defendant refers to several cartoons and articles in *Carrier Progress*, a publication produced by defendant for distribution to its carriers. Those cartoons and articles warn carriers about the dangers of leaving straps on the ground, and also state that several people have been injured as a result of tripping on improperly discarded straps. Since any fact which may be proved by direct evidence may be proved by circumstantial evidence (*see, e.g., Northern Virginia Power Co. v. Bailey*, 194 Va. 464, 470 (1952)), plaintiff argues that all of the above factors make the question of Richmond Newspapers' liability a proper one for the jury. The court disagrees.

It is well-settled that negligence cannot be presumed from the mere happening of an accident. Moreover:

> The burden is on the plaintiff to produce evidence of preponderating weight from which the trier of fact can find that the defendant was guilty of negligence which was a proximate cause of the accident. The evidence must prove more than a probability of negligence. The plaintiff must show why and how the accident happened. And if the cause of the accident is left to conjecture, guess, or random judgment, the plaintiff cannot recover. *Sneed v. Sneed*, 219 Va. 15, 17 (1978).

With regard to circumstantial evidence, *Sneed* teaches that in order to establish a *prima facie* case of negligence, such evidence must do more than show that an accident resulted from one of two causes, for one of which defendant is responsible and for the other of which it is not. 219 Va. at 18. *See also, Farren v. Gilbert*, 224 Va. 407, 411 (1982). And in *General Accident, Fire, etc. v. Murray*, 120 Va. 115 (1916), the Court stated:

> [T]he right to recover. . . must be established by a preponderance of the evidence adduced in the case, and not be based merely upon conjecture,

guess or random judgment, that is, upon mere supposition without a single known fact. 120 Va. at 126.

The above cases are controlling here. In the case at bar, plaintiff proved by direct evidence that he tripped on a strap and fell. He also proved that the strap which caused his fall was similar to the kind used by defendant, that a vending box operated by defendant was located across the street, and that the situs of the fall was near one of defendant's drop-sites. This is all plaintiff proved. Everything else relied upon by plaintiff to establish defendant's liability is based on conjecture, guess, or random judgment. Thus, in order for plaintiff to recover, a jury would have to infer that the strap which tripped up plaintiff was a Signode strap. If that inference could properly be drawn, the jury would then have to infer that it was one of the 20% of the Signode straps sold in the Richmond area to defendant, rather than one of the 80% sold in the same area to other customers. Next, even if both of those inferences could properly be drawn, the jury would then have to infer that defendant's strap was negligently discarded by a person or persons for whose negligence defendant is liable, rather than by someone else; for example, a refuse collector who negligently allowed a properly discarded strap to escape its container or a bookstore owner who buys bundles of newspapers and improperly discarded the strap in question. The court does not believe that these inferences can properly be drawn.

First, to conclude that the strap which caused plaintiff's fall is the same one which was used to bundle any of defendant's newspapers is to ignore the evidence that Signode is only one of several manufacturers who sell the same type of straps in the Richmond area, and that it is impossible for laymen such as plaintiff and his witnesses to differentiate between those straps. Such a conclusion also ignores the fact that the vast majority of Signode straps, 80%, are purchased and used by Richmond area customers other than defendant.

Second, such a conclusion is not bolstered by the presence of a newspaper vending box across the street from plaintiff's fall since there was no evidence that

bundling straps were ever placed, inadvertently or on purpose, in or around such box by defendant's agents or employees.

Finally, the fact that plaintiff's fall occurred near one of defendant's drop-sites does little to lessen the speculation required to find liability on the part of defendant. As defendant points out, there is hardly a place in Richmond which is not "near" one of defendant's drop-sites. Moreover, there is no evidence to show, and no reason to believe, that carriers or other persons identified with defendant are more likely to improperly discard their straps than are employees or agents of other users of similar straps in the Richmond area. To base a finding of liability on the mere fact of proximity between the location of plaintiff's fall and the location of defendant's drop-site is to require defendant to be a guarantor of the safety of everyone in Richmond with regard to improperly discarded straps, regardless of whose straps they are.[3] Because a finding of liability on the part of defendant on the circumstantial evidence presented in this case can only be made upon the type of "conjecture, guess or random judgment" frowned upon in *General Accident, Fire, etc. v. Murray, supra,* defendant's motions to strike and to set aside the verdict must be granted.

Aside from the above reasons for granting defendant's motions, the court would also grant those motions upon an additional ground. If the plaintiff were entitled to a proper, favorable inference from the proximity between the location of his fall and the location of defendant's drop-site, that inference would be that the subject strap was negligently discarded by one of defendant's carriers. The evidence is uncontroverted that all of defendant's carriers at the time in question were covered by one of two standard contracts issued by defendant, with the only difference in those contracts being that one provides for a discount in the wholesale price paid by the carriers

---

[3] Of course, such a result would be avoided where the actual strap causing a fall is available for inspection and testing to determine ownership. In cases such as the one at bar, however, defendant's burden to "disprove" ownership is virtually impossible.

for the newspapers, and the other does not. The court has reviewed those contracts and finds no difference between them and the contract considered by the Supreme Court of Virginia in *Richmond Newspapers v. Gill*, 224 Va. 92 (1982). *Gill* involved a claim under the Workmen's Compensation Act by the administrator of a newspaper carrier who was killed in an automobile accident while he was delivering newspapers for the same defendant as is involved here. In interpreting the precise standard form contract which is involved in the case at bar, the Supreme Court held that such contract made the carrier an independent contractor, and not an employee. While the present action does not arise under the Workmen's Compensation Act, the Court in *Gill* specifically noted:

> [W]hether a person is an employee or an independent contract "is governed, not by any express provision of the workmen's compensation law, but by the common law." *Hann v. Times-Dispatch Pub. Co.*, 166 Va. 102, 105, 184 S.E. 183, 184 (1936). The Act "does not undertake to change, as between themselves, the rights of owners and independent contractors. This statute leaves that relationship as it was at common law, and we must look to it in determining who is master and who is servant." *Crowder v. Haymaker*, 164 Va. 77, 79, 178 S.E. 803, 804 (1935). *Gill*, supra, at 97 (footnote omitted).

Because no facts were introduced in this case to distinguish the contract which covered al of defendant's carriers in Richmond at the time of plaintiff's accident from the contract before the Supreme Court in *Gill*, this court must conclude that even if a jury could infer that it was a Richmond Newspapers' carrier who negligently discarded the strap, that carrier was necessarily an independent contractor. And since an employer is not liable for the negligence of an independent contractor, defendant cannot be liable for the "inferred" negligence of a carrier here. *See, e.g., Norfolk & Western Railway v. Johnson*, 207 Va. 980 (1967) *cert. denied*, 389 U.S. 995 (1967); *Broaddus v. Standard Drug Co.*, 211 Va. 645 (1971); *Smith v. Grenadier*, 203 Va. 740 (1962).

For the reasons stated above, defendant's motion to strike plaintiff's evidence, which motion was previously taken under advisement by the court, will be granted; the verdict of the jury will be set aside; and final judgment will be entered in favor of defendant.