# CASES DECIDED

IN THE

# Supreme Court of Appeals

## OF VIRGINIA

### Richmond.

## AMERICAN FURNITURE COMPANY v. MANDY J. GRAVES, ET ALS.

January 15, 1925.

1. WORKMEN'S COMPENSATION ACT—*Findings of Fact of Commission Should be Stated Specifically—Mixed Conclusions of Law and Fact.*—The findings of fact on which a mixed conclusion of law and fact of the Industrial Commission is based should be stated specifically, and a finding that "the deceased sustained an accident arising out of and in the course of his employment" is a mixed conclusion of law and fact.

2. WORKMEN'S COMPENSATION ACT—*Findings of Fact Should be Certified Specifically.*—To comply with the workmen's compensation act, the Industrial Commission should certify all findings of fact specifically and separately from conclusions of law.

3. WORKMEN'S COMPENSATION ACT—*Findings of Fact Should be Stated Specifically and Separately—Case at Bar.*—In the instant case the Industrial Commission found that the deceased sustained an accident arising out of and in the course of his employment. It was objected that the findings of fact upon which this conclusion was based were not stated specifically and separately, but it sufficiently appeared that the Commission found, as a basis for this mixed conclusion of law and fact, that the deceased, while engaged in his employment as a carpenter, sustained an accident which caused an abrasion on his finger. That the death of deceased was due to the abrasion was not controverted.

*Held:* That this was sufficient.

4. WORKMEN'S COMPENSATION ACT—*Questions of Fact—Award of Industrial Commission Conclusive.*—The statute has provided the Commission

as a disinterested and competent tribunal, and the sole tribunal, to ascertain the facts, and has declared that its findings of fact shall be conclusive and binding. The power of the legislature to do this is not and could not be successfully challenged. No appeal from such findings is allowed to the Supreme Court of Appeals. This is made plainer by the further provisions of the statute, to the effect that only the findings of fact, not the evidence, shall be certified to the Supreme Court of Appeals.

5. WORKMEN'S COMPENSATION ACT—*Questions of Fact—Award of Industrial Commission Conclusive—Case at Bar.*—Aside from all question as to the proper weight or value which may, under the statute, be given to hearsay evidence, there was other unquestionably competent evidence before the Commission tending to sustain its findings that deceased while engaged in his employment as a carpenter sustained an accident which caused an abrasion and that death was due to the abrasion.

*Held:* That the Commission's award on this finding was conclusive and not appealable.

6. WORKMEN'S COMPENSATION ACT—*Hearsay Evidence—Weight to be Attached to Hearsay Evidence.*—While it was admitted in the instant case, an appeal by an employer from an award of the Industrial Commission under the workmen's compensation act, that hearsay evidence was properly admissible in evidence, it was claimed that the Commission, after hearing such evidence, should have given it no probative weight or value whatever in reaching its findings of fact, if the evidence, other than the hearsay statements, was not of itself sufficient to support the findings.

*Held:* That this position was untenable, as to sustain it would be to hold that the statute, in making the hearsay evidence admissible, did a useless and senseless thing.

7. WORKMEN'S COMPENSATION ACT—*Hearsay Evidence—Weight to be Attached to Hearsay Evidence.*—It follows from the fact that the hearsay evidence is made admissible by the statute, that the Commission is given the discretion to give it some probative weight, and that it is for the Commission to determine, and not for the court, what probative weight, if any, they should give to it in arriving at the findings of fact. Manifestly, the court could not interfere with the exercise of such discretion without usurping powers which are conferred by the statute on the Commission, since the Commission is the sole tribunal provided to ascertain the facts.

Appeal from an award of the Industrial Commission of Virginia.

*Affirmed.*

This is an appeal from an award of the Industrial Commission, under the workmen's compensation law (Acts 1918, chapter 400), against the employer, the American Furniture Company, in favor of the claimant, Mandy J. Graves, of compensation for the death of her deceased husband, Patrick J. Graves, the employee, who received the injury in question.

It was shown before the Commission by the testimony of the attending physician that the death of the deceased was due to blood poisoning which developed from an abrasion on a finger of the deceased "about the size of a dime," the cause of which abrasion was unknown to the physician.

The statements of the testimony before and the findings of fact of the Commission (some of the latter being found in its statements under the heading "conclusions of law") on the question of fact of whether the abrasion was caused by an accident arising out of and in the course of the employment of the deceased, so far as material to be stated, are as follows:

*"Findings of Fact.*
\*      \*      \*      \*      \*      \*      \*      \*      \*

"The deceased died on February 2, 1924. The question involved is whether or not his death was due to an accident arising out of and in the course of his employment.
\*      \*      \*      \*      \*      \*      \*      \*      \*

"The claimant widow testified that her husband died on a Saturday, which was, as stated above, February 2nd of this year; that on the Monday morning preceding his death he left home for his work and made no mention of any illness or injury of any sort and was apparently in good health, and that he had made no complaint previous to this time of this character; that he came

home for lunch in the middle of the day and at that time had his hand wrapped up and stated that he had hurt it; that she bathed it but did not take off the bandage; that he returned to work in the afternoon and worked until six o'clock, when he came home and lay down and ate no supper, again stating that he had hurt his hand; that Tuesday morning, the following day, he said that his arm hurt to the shoulder, but that he was going to work; that he went to work and remained all day, returning about 8.30 p. m., and that he did no work following this whatever. The claimant further stated that she did not see the hand until it was unwrapped by the doctor on Wednesday morning; that even then she paid no particular attention to it, as she did not think it was serious; that the deceased, however, told her that he had injured one of the fingers of his left hand, which she thought was the middle finger.

"T. W. Lanier testified that he is in charge of the supply room of the employer, and that the deceased was employed as general carpenter about the plant, working part of the time outside, but mostly inside of the plant, and that he was generally in witness' supply room a half dozen times or so a day; that somewhere about the middle of the week, before the death of the deceased, he came into the supply room and asked witness for a rag to wrap his finger up with; that witness asked him what was the matter with it and he replied that he had struck his finger with a hammer hanging a door; that he had missed a nail he was driving and struck his finger; that thereupon witness told him that he had better go to the office of Mr. Morgan and get some iodine to put on his finger, and wrap it up, instead of wrapping it up with the rag which he procured from the supply room; that deceased, however, wrapped up his finger with this rag, and witness tied it for him after

he had wrapped it up. He was of the impression that it was the index finger or the middle finger which claimant told him he had injured.

"Reeves Richardson, another employee, stated that on the Monday before the deceased died he saw him with his hand wrapped up and asked him what was the matter with it, and he replied that he had mashed it.

"G. B. Brown, another employee, saw the deceased on Monday about 6.00 p. m., and noticed that he had his finger tied up, and upon asking him what was the matter, deceased replied that he had hurt it at work in the office. This witness further stated that, to the best of his recollection, the injured finger was the middle finger of the left hand.

"George Richardson, a neighbor of the deceased, testified that he saw him first on Tuesday night before his death; that he had learned that he was sick and went to see him; this witness further stated that when he reached the deceased's home he found him in bed with one of his fingers, or his hand, tied up, and that while he was sitting and talking with him, the deceased attempted to turn himself in bed and struck the injured hand against the bed, whereupon he complained 'mighty bad'; that witness thereupon asked him what was the matter, and he replied that he had struck his hand against the bed, further adding: 'Looks like it will kill me, the pain went clear through me;' that he did not notice whether the hand was inflamed at this time, although it was wrapped up. He was asked this question: 'How hard did he strike it?' To which he replied: 'Didn't seem like he hit it very hard.' Richardson saw the deceased twice more before his death, once about Wednesday night and again toward the end of the week. He stated that on the occasion of his second visit the hand was badly swollen.

"E. A Marshall testified that he saw the deceased a few days prior to his death; that he went to work with him Monday and Tuesday morning; that on Monday night the deceased had his hand tied up and also had it bound up on Tuesday; that on Monday night he asked him what was the matter, and deceased replied that he had hurt it; that on Tuesday deceased told him that he had hurt his hand badly.

"For the defendant the following appears:

"Dr. W. B. Dudley testified that he was the deceased's attending physician; that he was first called to see him on Wednesday before his death; that at this time he was complaining of aching and had some temperature; that his diagnosis at that time was influenza; that on Thursday he returned and found him apparently some better, but was called back on Friday, at which time he found his hand much swollen and on Saturday found that he had septic pneumonia, of which he died about 3.00 p. m. that day. Dr. Dudley explained that septic pneumonia is a form of blood poisoning, being an infection localized in the lungs. To quote his exact language:

" 'Septic pneumonia is nothing but a form of blood poisoning. In other words, if you should get an injury to your toe and infection sets in, that infection may spread from the toe to the lung.'

"On Thursday when he called to see deceased, Dr. Dudley testified that he found an abrasion on one of his fingers about the size of a dime; that it had become somewhat infected and that he cleaned it with alcohol and tied it up; that he could not tell what caused the abrasion, although it might have come from a boil, if the boil had been opened or ruptured; that the deceased gave him, however, no explanation of the cause of it.

\*     \*     \*     \*     \*     \*     \*     \*     \*

"Dr. Dudley was shown report which he made to the insurance company in reference to the deceased, which contains the following statements:

"In answer to the question, 'what external or visible marks of injury did you find upon the deceased?' he answered: 'Abrasion on second finger of right hand and arm swollen.' In answer to the question, 'give full particulars regarding the injuries that caused death, describing their location and extent,' he replied: 'On the 28th skinned finger slightly and bruised finger on the 31st against bed causing hand and arm to inflame. This developed into septicomia, causing death on February 2, 1924.' In answer to the question, 'how do you understand accident occurred?' his reply was: 'The abrasion was caused by striking hand against timber. The bruise was result of striking hand against bed;' and in answer to the question, 'did the injury independent of all other causes produce the death of the deceased?' he replied: 'Yes.'

"As stated, he was shown this report and in his testimony stated that his answers to the above questions were the same at this time as when he made the report. He further explained his opinion as to the connection between the striking of the hand against the bed by stating: 'Yes, I think that was the cause of the spreading of the infection. It became general as a result of it, it changed from the local condition to the general condition.'

"Dr. Dudley also testified that in his report, required under the vital statistics law, he gave the cause of the death as 'blood poisoning, caused from incipient abrasion of the hand.'

"W. E. Morgan, superintendent of the employye company, testified that some time during the week pre-

ceding deceased's stopping work, he came to him and asked if he had anything which was good for a boil; that thereupon he showed him a spot on the middle finger of his left hand which looked like a small rising, or little bump, about an eighth of an inch across the base; that witness painted it with iodine and wrapped it up; that deceased said nothing of an injury at that time.    The witness also testified that it is the company's rule that all accidents, even trivial in character, be reported to him.    This was the only time he treated the place in question for the deceased.

"R. H. Yarborough, another employee, stated that he saw deceased on the Monday before his death, at which time he showed him the injured finger when they were both reporting for work; that at that time witness had a felon on one of his fingers, and deceased came in and said to him:  'I wish you would take back what you give me.'    I says:  'What did I give you?' and he turned around and had a red spot on his finger, a little red knot on it; that the skin did not appear to be broken. He further added that deceased was always 'running on and joking with somebody.'    I had that on my finger and he merely said it because he had one on his finger. I asked him what it was and he showed me that bump on his finger.'

"James  Dawson,  another  employee,  testified  that about ten minutes before deceased stopped working on the last day that he worked, he told witness that his finger was hurting badly; that witness thereupon asked him what was the matter, and he replied that he had a carbuncle on it; that he did not see the finger.

"W. E. Covington, another employee, testified that about 4.30 p. m. on the afternoon of the day before the deceased stopped work he saw him picking at a place on his hand with a knife, and told him that he had

better stop doing it.  He did not ask him what had caused it or anything else about it.

"C. D. Whitlow testified that two or three days before deceased left work he saw a sore on his hand, and asked what was the matter, and deceased replied:  'I have a rising on it;' that it was a small red place.

"Under the foregoing testimony, the Commission, finds that the deceased sustained an accident arising out of and in the course of his employment on the 28th day of January, 1924; that he was, by reason of the same, totally incapacitated from and including January 30, 1924; and that his death on February 2, 1924, was due to the said accident.

### *"Conclusions of Law.*

"The case furnishes an illustration of the difficulty frequently encountered in deciding questions similar to this under the compensation law.   Such questions must, of course, be always approached bearing in mind the broad purpose and intent of the law which it is the duty of this Commission to administer.   It is, of course, a cardinal principle that the burden of proof rests upon a claimant to establish the fact of an accident and that the resulting condition is due to the said accident.   It is, however, also true that this rule does not mean that the claimant must establish his case beyond a reasonable doubt.   A fair preponderance of the evidence is all that is required.   It must also be remembered that the Commission is empowered to draw reasonable inferences from proper testimony introduced.

"The following statement from the case of *Hydrox Chemical Company* v. *Industrial Commission*, 291 Ill. 579, 126 N. E. 564, was recently quoted by this Commission with approval in the case of *Roane* v. *Kauffman*

*& Company,* Vol. 4, No. 7, page 309, Adv. Sheets, O. I. C., page 317.

" 'Counsel for plaintiff in error strenuously argued that there is no evidence in the record that the injury to the deceased came from any accident arising out of and in the course of the employment. This court has said more than once that the burden rests upon the claimant to show by competent testimony, not only the fact of the injury, but that it occurred in connection with the employment of the deceased; to furnish evidence from which the inference can be logically drawn that the injury arose out of and in the course of the employment; that the proof must be based on something more than mere guess, or conjecture; that the proof of such facts may be established by circumstantial as well as by direct evidence, *and the greater or less probability, leading, on the whole, to a satisfactory conclusion, is all that can reasonably be required to establish controverted facts.'* (Italics added.)

"The Commission feels that the greater probability under the testimony in this case leads to the conclusion reached.

"A great deal of stress is laid in the brief filed by the defendant upon the fact that the deceased struck his hand against the bed, as set out in the findings of fact. The testimony, however, of the witness, Dr. Dudley (and it must be remembered that he was a witness for the defendant), clearly indicates that he did not fix this occurrence as the real cause of the death, but that, to his mind, it was merely an exciting cause superinduced upon a previous condition. The testimony of the witness Richardson thoroughly bears out this also. He testified that it did not appear to him that the deceased struck his hand a very hard blow. The condition was evidently there, as otherwise such a slight blow would

not have produced the pain which the deceased evidently suffered as a result of it.    Rather, therefore, than indicating that this blow was the real cause of the blood poisoning, it points conclusively to the fact that there was a condition antedating it.

\*      \*      \*      \*      \*   °   \*      \*      \*      \*

"Certainly, it cannot be claimed that the original condition of the finger of the deceased was due to the striking it against the bed.    Looking, therefore, beyond this for the real cause of the abrasion, we are confronted with the following circumstances, tending to support the claimant's contention:

"(1) He had said nothing to his wife, previous to the Monday before his death, of the boil.

"(2) He told several persons that he had injured his hand on Monday and Tuesday.

"The fact that he also stated to defendant's witnesses that he had a rising, a boil and a carbuncle, does not, to the mind of the Commissioner, mean that it is necessary to believe that either set of witnesses is mistaken as to these statements of the deceased.    In fact, there is one circumstance which strongly tends to indicate that the deceased made both the statements attributed to him by the claimant's witnesses and those of the defendant.    This is the fact that the testimony of the witness Lanier, for the claimant, and of Morgan, the superintendent of the employer, dovetails together. As set out above in the findings of fact, Lanier stated that when the claimant came in and told him that he had injured his hand, he advised him to go to Morgan's office and have him treat it.    Lanier stated that this was some time during the week preceding his death. Morgan testified that the deceased came to his office some time during the week preceding his death and exhibited a small red spot, telling him that it was a boil.

It is certainly not an unwarranted assumption to believe that a laboring man, such as was the deceased, would not be entirely accurate in his language, and that he did actually injure the finger, and that he did later speak of it as a rising, a boil, or a carbuncle.

"(3) The most natural explanation of an abrasion is furnished in the striking of the hand by a hammer, or a similar incident, and a carpenter is, of course, apt to sustain such an accident.   It is a well known fact that just such results as were present with deceased do follow from slight abrasions.   Within the last few days a noteworthy illustration of this has been the death of the son of the President of the United States by reason of an infection having its origin in a blister upon his foot.

\*      \*      \*      \*      \*      \*      \*      \*

"Even if it were clearly and properly established that the deceased had actually had a boil on his finger previous to having struck it with the hammer, it would not by any means follow that his widow would not be entitled to compensation.   If the blow was the direct cause of the infection, then again we would have a condition directly traceable to an accident.

"Unfortunately, the testimony of the deceased is not available.   He, if he were alive, could no doubt definitely clear up the doubts now existing.   Without this, the most that can be done is to take the testimony available, carefully weight it with reference to the reasonable probabilities, and thus reach a conclusion.

\*   \*   \*''

The assignments of error are as follows:

"1. Admitting for the purpose of this assignment of error that the Commission's statement of the evidence in this cause, set out in the record, pages 2 to 7, inclusive, is correct, still the Commission erred in finding

that the deceased died as the result of an accident aris-
ing out of and in the course of his employment, for the
reason that in the evidence as set forth by the said
Commission in said record, there is no evidence upon
which such a conclusion can be based.  The question
of whether there is no sufficient evidence upon which to
base an award is a matter of law and therefore re-
viewable by this honorable court under section 61 of the
compensation act.

"2. The record on its face shows that the aforesaid
finding of fact was founded entirely on hearsay evidence,
inadmissible under the rules of the common law, and
hence said award based thereon was and is without
evidence to support it, and the said award is reviewable
by this honorable court under section 61 of the compen-
sation act, as a matter of law.

"3. The Commission erred in finding that the de-
ceased met his death as the result of an accident arising
out of and in the course of the employment, as there
was and is no legally competent evidence upon which
such finding of fact could be based, and, therefore, the
finding by the Commission and the award thereon is
reviewable by this honorable court as a matter of law."

*S. S. P. Patteson* and *J. H. Rives, Jr.*, for the appel-
lants.

*J. R. Smith* and *S. A. Anderson*, for the appellees.

SIMS, P., after making the foregoing statement, de-
livered the following opinion of the court:

[1-3] The findings of fact are not stated as specifically
and separately from the conclusions of law as they
should be.  The finding that "the deceased sustained

an accident arising out of and in the course of his employment" is a mixed conclusion of law and fact, so far as embraced in the language quoted. The finding of fact on which such conclusion was based should have been stated specifically, for, to comply with the statute, the Commission should certify all findings of fact specifically and separately from conclusions of law. However, we think it sufficiently appears in the instant case that the Commission found, as the basis for said mixed conclusion of law and fact, the following facts, namely, that the deceased, while engaged in his employment as a carpenter, sustained an accident which caused the abrasion on his finger. These are the only findings of fact of the Commission which are drawn in question by the assignments of error, and they are findings upon pure questions of fact. That the death was due to the abrasion is not controverted.

The evidence, so far as material, appears from the statement above and need not be repeated. It is sufficient to say that there was no eyewitness of the accident other than the deceased. But there was evidence, as to the admissibility and probative value of which there is no question, disclosing circumstances tending to show that the deceased did sustain the aforesaid accident while engaged in his employment as a carpenter. There were also in evidence the hearsay statements of the deceased, which the Commission held were not conflicting, some of which confirmed the probability that such accident was sustained by the deceased.

[4, 5] The assignments of error present the following single question for decision:

1. Is the award in such case, in its findings of fact, upon pure questions of fact, conclusive and binding, under the provisions of section 61 of the workmen's compensation law of this State, which declare that the

award "shall be conclusive and binding as to all questions of fact?"

The question must be answered in the affirmative.

We think the statute means what it says in the language quoted in the question. The statute has provided the Commission as a disinterested and competent tribunal, and the sole tribunal, to ascertain the facts, and has declared that its findings of fact shall be conclusive and binding. The power of the legislature to do this is not and could not be successfully challenged. No appeal from such findings is allowed to this court. This is made plainer by the further provisions of section 61 of the statute, to the effect that only the findings of fact (not the evidence) shall be certified to this court. This is not a case in which there was no evidence before the Commission to support such findings. Aside from all question as to the proper weight or value which may, under the statute, be given to the hearsay evidence, there was other unquestionably competent evidence before the Commission tending to sustain its findings of fact in question. Then there were the hearsay statements of the deceased, also tending to sustain such findings.

[6, 7] It is admitted in the argument for the employer that, under the Virginia statute, the Commission is not to be governed in the hearing by common law rules of evidence, and that the hearsay statements aforesaid were properly admissible in evidence. But it is claimed that the Commission, after hearing such evidence, should have given it no probative weight or value whatever in reaching its findings of fact, if the evidence, other than the hearsay statements, was not of itself sufficient to support the findings. We cannot bring our minds to assent to the correctness of such a position. To do so would be to hold that the statute,

in making the hearsay evidence admissible, did an useless and senseless thing. On the contrary, we think that it follows, inevitably, from the fact that the hearsay evidence is made admissible by the statute, that the Commission is given the discretion to give it some probative weight, and that it is for the Commission to determine, and not for the court, what probative weight, if any, they should give to it in arriving at the findings of fact. Manifestly the court could not interfere with the exercise of such discretion without usurping powers which are conferred by the statute on the Commission, since the Commission is the sole tribunal provided, as aforesaid, to ascertain the facts.

As we understand them, the assignments of error do not challenge the sufficiency of the evidence, including the hearsay statements aforesaid, to support the aforesaid findings, if any probative weight or value can be given the hearsay evidence. But even if the question were presented, whether, in the evidence as a whole (it being all admissible), there was sufficient evidence to support the findings of fact in question, we would have no jurisdiction to enter upon that inquiry. We so held in *Stonega Coal and Coke Co.* v. *Sutherland,* 136 Va. 489, 118 S. E. 133, and we adhere to that holding.

There are, it is true, a number of decisions of other courts cited and relied on for the employer, involving the construction of other workmen's compensation laws, holding that the appellate court has jurisdiction to inquire whether there is sufficient evidence, other than hearsay evidence, to support the findings of fact of the Commission; that, in the absence of such other sufficient evidence, the findings of fact will be regarded as having no evidence to support them; and that the award, in such case, will be for that reason set aside.

Of such decisions we deem it sufficient to say that they are so contrary to our view of the correct construction of the Virginia statute that we cannot follow them, and, hence, we do not review them.

The case must be affirmed.

*Affirmed.*