COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Beales and Alston
Argued at Richmond, Virginia

DEAN McCLUSTER, d/b/a
  McCLUSTER CONSTRUCTION AND
  AUTO-OWNERS INSURANCE COMPANY

MEMORANDUM OPINION* BY
v.        Record No. 0414-17-2         JUDGE ROSSIE D. ALSTON, JR.
                                        DECEMBER 5, 2017
VIRGILLIO BALTAZAR

FROM THE VIRGINIA WORKERS' COMPENSATION COMISSION

> Roberta Ann Perko (Christopher M. Kite; Lucas & Kite, PLC, on
> briefs), for appellants.
>
> E. Wayne Powell (Powell Law Group, PC, on brief), for appellee.


Dean McCluster (appellant) argues in this appeal that the composition of the Virginia

Workers' Compensation Commission review panel was improper when it heard appellant's first

motion to reconsider.  Specifically, appellant contends that because a vacancy on the

Commission was filled before the motion was heard, Commissioner Rappaport should have

served on the review panel.  Therefore, according to appellant, the composition of the review

panel violated Code § 65.2-705(D).  Additionally, appellant alleges that no credible evidence

supported the Commission's findings that appellee sustained a compensable injury by accident

arising out of and in the course of employment.  We disagree and affirm the decision of the

Commission.

---

* Pursuant to Code § 17.2-413, this opinion is not designated for publication.

BACKGROUND

For the past seven years, appellant[1] employed appellee at appellant's construction company, McCluster Construction. Appellant operated McCluster Construction from his property. Appellee performed manual labor on the property as appellant's employee. Appellant was paid $10 per hour during the week for his work. Appellee often worked for appellant on weekends - appellant sometimes paid appellee for his weekend work. To ensure appellee's constant availability, appellant rented a mobile home to appellee, which was located on appellant's property. In addition, appellant fully or partially subsidized appellee's utility and rent payments during months when weather prevented appellee from working. Over the years, appellant and appellant's family developed a friendship with appellee. Unfortunately, McCluster Construction fell on hard financial times and appellant sold the mobile home and surrounding plot of land. In order to close on the sale, the area needed to be cleared. The clearing benefitted both appellant and appellee; proceeds of the sale enabled appellant to pay off McCluster Construction's debts, and appellee was required to vacate and move his belongings to his new home.

On April 26, 2014, a sunny Saturday afternoon, appellant and appellee attempted to clear the mobile home and surrounding plot of land. The pair retrieved a company-owned forklift to remove a non-working pickup truck from the area. When driving the forklift back to the clearing location, appellant operated the forklift from the cab while appellee reclined under the boom, nestled in the frame of the forklift. Appellant drove the forklift with the boom in an upright position, providing him an unobstructed view of his path, the front of the forklift, and of appellee. After arriving at their destination, appellee began to disembark from the forklift. At

---

[1] For the sake of clarity, the singular form of appellant will be used to refer to Dean McCluster. However, please note that the appellants of record include Dean McCluster, d/b/a McCluster Construction and Auto-Owners Insurance Company.

this time, appellant lowered the boom, striking appellee on the head, pinning appellee to the forklift, and knocking him unconscious. Appellant unpinned appellee from the forklift, placing his limp body beside the machine. Appellee sustained a bloody gash to the head and severe spinal trauma. The spinal injury resulted in appellee becoming quadriplegic. In addition, appellee has been diagnosed with depression and delirium.

Appellee filed a claim for temporary total disability benefits commencing on April 26, 2014 and continuing, a lifetime medical award, and payment of medical bills and expenses directly related to his work injuries. In her opinion, Deputy Commissioner Lee indicated that there was conflicting testimony regarding whether actions taken and items removed from the property were business-related, and how exactly appellee sustained his injuries. She relied on appellant's testimony and found that appellee did not prove that he sustained a compensable injury by accident arising out of and in the course of employment. Accordingly, the deputy commissioner found for appellant. Appellee appealed to the Commission, arguing that there was credible evidence to support that he sustained an injury by accident arising out of and in the course of his employment, including his own testimony, expert testimony, medical records, emergency phone calls, and additional physical evidence. The Commission found that appellee had met his burden and reversed the deputy commissioner, awarding appellee temporary total disability benefits commencing on April 26, 2014 and continuing.

Appellant filed a motion to reconsider the Commission's review opinion on February 20, 2017. The bases of that motion were: 1) that no credible evidence supported the Commission's findings that appellee sustained a compensable injury by accident arising out of and in the course of his employment, and 2) that the Commission lacked "an employer representative" pursuant to Code § 65.2-200(D). The review panel denied the motion. In response, appellant made a second motion to reconsider and a motion to vacate. Appellant based this second set of motions on the

same grounds as the first and also argued that the composition of the review panel was improper pursuant to Code § 65.2-705(D). Per Code § 65.2-705(D), the composition of the review panel was proper when the review process was initiated. Because there was a vacancy on the Commission, the Chairman was authorized to appoint a deputy commissioner. Code § 65.2-201(E). However, appellant alleges the composition of the review panel became improper at the time the motion to reconsider came before the review panel. Commissioner Rappaport was sworn in on February 16, 2017, four days before appellant filed his first motion to reconsider. Because the vacancy was filled before the review panel heard the motion, appellant argues that Commissioner Rappaport should have served on the review panel, not Chief Deputy Commissioner Szablewicz.

Ultimately, the Commission found credible evidence to support the finding that appellee sustained a compensable injury by accident arising out of and in the course of his employment. The Commission also found that the composition of the review panel complied with the Code. Appellant appealed to this Court, arguing that the composition of the review panel violated Code § 65.2-705(D) and that there was no credible evidence to support the Commission's findings.

ANALYSIS

I. The Composition of the Review Panel was Proper.

Appellant argues that the composition of the review panel was improper when it heard appellant's first motion to reconsider. Appellant specifically argues that it was inappropriate for Chief Deputy Commissioner Szablewicz to sit on the review panel when another commissioner was available per Code § 65.2-705(D). We disagree.

Conclusions of the Commission on questions of law are not binding on review and are reviewed *de novo*. See Brown v. Fox, 189 Va. 509, 517, 54 S.E.2d 109, 113 (1949). "An issue

- 4 -

of statutory interpretation is a pure question of law," and thus, we must conduct a *de novo* review. Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (citing Crawford v. Haddock, 270 Va. 524, 528, 621 S.E.2d 127, 129 (2005)). This Court is "required to construe the law as it is written[,] and an erroneous construction by [the Commission] cannot be permitted to override the clear mandates of [the] statute." Danville Radiologists, Inc. v. Perkins, 22 Va. App. 454, 458, 470 S.E.2d 602, 604 (1996) (quoting Pavlicek v. Jerabek, Inc., 21 Va. App. 50, 56, 461 S.E.2d 424, 427 (1995)). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." Conyers, 273 Va. at 104, 639 S.E.2d at 178 (citing Campbell v. Harmon, 271 Va. 590, 597-98, 628 S.E.2d 308, 311-12 (2006)). "[W]e must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Id. (citing Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 925-26 (2006)).

In conducting this analysis, we first recognize that commissioners and deputy commissioners derive their statutory authority from different sources. Pursuant to Code § 65.2-200(B) a commissioner is elected by the General Assembly and serves a six-year term. Deputy commissioners, on the other hand, are appointed by the chairman of the Commission pursuant to Code § 65.2-705(D). The chairman may make such appointments "when a vacancy on the Commission exists, or when one or more members of the Commission are absent or are prohibited from sitting with the full Commission to hear a review." Code § 65.2-705(D). In addition, the General Assembly empowered review panels comprised of both commissioners and deputy commissioners to act. Under Code § 65.2-201(E), "[a] majority of the *commissioners* shall constitute a quorum for the exercise of judicial, legislative, and discretionary functions of the Commission, whether there is a vacancy in the Commission or not." (Emphasis added). Achieving a quorum is necessary for the exercise of those powers. Id.

- 5 -

In this case, one commissioner was absent. This absence triggered the mechanism provided in Code § 65.2-705(D). Thus, the Chairman appointed a deputy commissioner to the review panel. The review panel consisted of two commissioners and one deputy commissioner. Because a "majority of commissioners" existed, a quorum was achieved. Code § 65.2-201(E). Therefore, the review panel was authorized to take "judicial, legislative, and discretionary" action; as such, the composition of the review panel comports with the requirements of Code § 65.2-705(D). Id. Considering the plain meaning of the Code, the composition of the review panel was proper.[2]

## II. Credible Evidence Supported the Commission's Findings that Appellee's Injuries Arose out of an Actual Risk of and in the Course of Employment.

Appellant argues that no credible evidence supported the Commission's findings that appellee sustained an injury by accident arising out of and during the course of employment.

"A finding that an injury was sustained in an accident arising out of and in the course of employment within the meaning of the Work[ers'] Compensation Act is a mixed conclusion of law and fact and is properly reviewable by this Court." Conner v. Bragg, 203 Va. 204, 207, 123 S.E.2d 393, 395 (1962) (citing American Furniture Co. v. Graves, 141 Va. 1, 14, 126 S.E. 213,

---

[2] "An issue of statutory interpretation is a pure question of law," and thus, we must conduct a *de novo* review. Conyers, 273 Va. at 104, 639 S.E.2d at 178 (citing Crawford, 270 Va. at 528, 621 S.E.2d at 129). Conclusions of the Commission on questions of law are not binding on review and are reviewed *de novo*. Brown, 189 Va. at 517, 54 S.E.2d at 113. Code § 65.2-200(D) states that "of the three commission members, only one shall represent employees and only one shall represent employers." Gordon v. Ford Motor Co., 55 Va. Ap. 363, 385, 685 S.E.2d 880, 891 (2009) (citing Code § 65.2-200(D)). Appellant contends that there was no employer representative. Appellant offers no evidence in support of this contention other than providing the following labels for the review panelists: Commissioner Marshall-an employee representative, Commissioner Newman-a neutral representative, and Chief Deputy Commissioner Szablewicz-"a well-qualified but inferiorly positioned substitute whose inferior positioning limited the possibility . . . of initiating dissent." There is no evidence pertaining to the "previous vocation, employment or affiliation" of Chief Deputy Commissioner Szablewicz to determine whether or not he acted as an "employer" representative. Code § 65.2-200(D).

216 (1925)). "This Court is bound by the Commission's factual findings so long as they are supported by credible evidence, 'even if contrary evidence can be found.'" Va. Emp't Comm'n. v. Hale, 43 Va. App. 379, 385, 598 S.E.2d 327, 330 (2004) (quoting Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991)). "In determining whether credible evidence exists, [this Court] does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citing Jules Hairstylists, Inc. v. Galanes, 1 Va. App. 64, 69, 334 S.E.2d 592, 595 (1985)). "If, however, there is no credible evidence to support the Commission's findings of fact, its findings are not binding on us[,] and the question of the sufficiency of the evidence becomes one of law." Goodyear Tire & Rubber Co. v. Watson, 219 Va. 830, 833, 252 S.E.2d 310, 312 (1979) (citing A & P v. Robertson, 218 Va. 1051, 1053, 243 S.E.2d 234, 235 (1978)). "The scope of a judicial review of the fact finding function of a [W]orkers' [C]ompensation [C]ommission, therefore, is severely limited, partly in deference to the agency's expertise in a specialized field." Southside Virginia Training Ctr. v. Ellis, 33 Va. App. 824, 828, 537 S.E.2d 35, 37 (2000) (quoting Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 4-5, 526 S.E.2d 267, 268 (2000)). In addition, it is well-settled that we adhere to the "presumption of regularity" with regard to the Commission's findings. Code § 2.2-4027 (noting that the reviewing "court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted").

A compensable injury is defined by statute as "only [an] injury by accident arising out of *and* in the course of the employment or occupational disease." Code § 65.2-101 (emphasis added). The phrase "'arising out of employment and course of employment' is to be read conjunctively and not synonymously. Both conditions must be met before compensation can be

awarded." Lucas v. Lucas, 212 Va. 561, 563, 186 S.E.2d 63, 64 (1972) (quoting Brown v. Reed, 209 Va. 562, 564, 165 S.E.2d 394, 396 (1969)). These terms are to be "liberally construed" to carry out "the humane purposes of such laws." Cohen v. Cohen's Dep't Store, Inc., 171 Va. 106, 110-11, 198 S.E. 476, 477 (1938) (citing Holland-St. Louis Sugar Co. v. Shraluka, 116 N.E. 330, 331 (Ind. App. 1917)). In addition, "the [C]ommission, like any other fact finder, may consider both direct and circumstantial evidence in its disposition of a claim." City of Waynesboro v. Griffin, 51 Va. App. 308, 313, 657 S.E.2d 782, 784 (2008) (quoting VFP, Inc. v. Shepherd, 39 Va. App. 289, 293, 572 S.E.2d 510, 512 (2002)). The burden lies with the claimant "to prove by a preponderance of the evidence that the accident 'arose out of and in the course of his employment.'" Conner, 203 Va. at 207-08, 123 S.E.2d at 396 (quoting Norfolk & Washington Steamboat Co. v. Holladay, 174 Va. 152, 157, 5 S.E.2d 486, 488 (1939)).

## A. Arising Out of Employment

Appellant contends that no credible evidence supported that appellee suffered a compensable injury by accident arising out of an actual risk of his employment.

"The words arising out of have been construed . . . to refer to the origin or cause of the injury." Id. at 208, 123 S.E.2d at 396 (citing Southern Motor Lines v. Alvis, 200 Va. 168, 170, 104 S.E.2d 735, 737 (1958)). To determine causality, "Virginia employs the 'actual risk test.'" Dan River, Inc. v. Giggetts, 34 Va. App. 297, 304, 541 S.E.2d 294, 297 (2001) (quoting Cty. of Chesterfield v. Johnson, 237 Va. 180, 185, 376 S.E.2d 73, 75 (1989)). This test states that "the causative danger must be peculiar to the work, incidental to the character of the business[,] and not independent of the master-servant relationship." Id. The actual risk test "necessarily excludes an injury caused by 'a hazard to which the workman would have been equally exposed apart from the employment.'" Bernado v. Carlson Cos.-TGIF, 60 Va. App. 400, 405-06, 782 S.E.2d 508, 511 (2012) (quoting Hill City Trucking v. Christian, 238 Va. 735, 740, 385 S.E.2d

- 8 -

377, 380 (1989) (emphasis omitted)). The "causal connection is established when 'the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment.'" City of Waynesboro, 51 Va. App. at 314, 657 S.E.2d at 784 (quoting Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938)).

"[W]e view the evidence in the light most favorable to . . . the party prevailing below." Starbucks Coffee Co. v. Shy, 61 Va. App. 229, 233, 734 S.E.2d 683, 685 (2012) (quoting Tomes v. James City Fire, 39 Va. App. 424, 429-30, 573 S.E.2d 312, 315 (2002)). The evidence establishes the Commission's finding that the causative danger in this matter was a risk peculiar to appellee's employment. Appellant employed appellee at McCluster Construction, which was operated from appellant's property. Appellee regularly performed manual labor, completing a variety of construction-related jobs as part of his employment. When appellee was injured, he was clearing the mobile home and surrounding area. The clearing process was an act of manual labor that required the use of a company-owned forklift. The clearing location was on appellant's property, and appellant sold the parcel and mobile home for business purposes. Appellant and appellee frequently used the machine causing appellee's injury while doing work for McCluster Construction. Appellant operated the forklift from the cab while appellee, with the knowledge and acquiescence of appellant, reclined on the front of the forklift, positioned under the boom. Appellee often rode on the forklift in this manner while performing work as an employee for McCluster Construction. The Commission rejected the testimony of appellant and appellant's daughter, indicating that they did not know how appellee sustained his injury. The Commission necessarily relied on testimony from appellee and expert Gary Kilpatrick, in addition to blood smears on the boom, emergency calls, and medical reports, to conclude that as appellee disembarked from the forklift, appellant lowered the boom, causing appellee's injuries.

- 9 -

Because the clearing was on appellant's property, from where appellant operated his business, required manual labor, involved the use of company machinery, and was done for a business purpose, the risk of injury from the forklift was peculiar to appellee's employment.

The evidence establishes that the causative danger was incidental to the character of the business. Appellant's company was a construction company. The nature of the work involved manual labor. The clearing served two purposes: Appellee needed to vacate the premises so he could find other housing, and appellant testified that the main purpose for the clearing was business-related. McCluster Construction had fallen on hard financial times, and closing on this sale would allow appellant to take advantage of the proceeds in order to pay off company debts. Therefore, the clearing was incidental to the character of the business.

Additionally, the causative danger was not independent of the master-servant relationship. Appellant and appellee had a multi-faceted relationship; they were simultaneously landlord and tenant, friend and friend, and employer and employee. On the day in question, appellant, acting as appellee's employer, supervised and worked with appellee on company property, using company equipment, to complete a project benefitting the company.

Thus, it is clear appellee's injuries arose out of an actual risk of his employment.

### B. In the Course of Employment

Appellant contends that no credible evidence supported that appellee sustained such an injury in the course of his employment.

The words "course of employment" refer to "the time, place, and circumstances under which the accident occurred." Cty. of Chesterfield, 237 Va. at 183, 376 S.E.2d at 74. "[A]n accident occurs 'in the course of employment' when it takes place within the period of employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling duties of his employment or engaged in doing something incidental thereto." Combs v.

<u>Virginia Elec. & Power Co.</u>, 259 Va. 503, 511, 525 S.E.2d 278, 283 (2000) (quoting <u>Bradshaw</u>, 170 Va. at 335, 196 S.E. at 686). Relevant to this case, an employee is not barred from receiving compensation if he acted voluntarily "in his employer's interest." <u>Lucas</u>, 212 Va. at 564, 186 S.E.2d at 65. In addition, compensation is "not confined to injuries occurring only during working hours . . . so long as an employment relationship existed during" the injurious event. <u>Id.</u> at 563, 186 S.E.2d at 65 (citing <u>Honaker v. Hartley</u>, 140 Va. 1, 13-14, 124 S.E. 220, 223 (1924)).

Appellee sustained his injuries within the period of his employment. Appellant employed appellee for seven years at appellant's company, McCluster Construction, paying appellee $10 per hour during the week. As additional compensation, appellant provided on-site housing and subsidized utility and rent payments during months when the weather prevented appellee from working. This allowed appellee to be constantly available to appellant. The accident occurred on April 26, 2014. While the accident occurred on a Saturday, appellee often worked as needed on weekends. Appellee was sometimes paid for his weekend work. We note that payment for work is not dispositive in this assessment. <u>See</u> <u>Purvis v. Porter Cabs, Inc.</u>, 38 Va. App. 760, 766, 568 S.E.2d 424, 427 (2002) (stating that "[t]he elements of an employment relationship are: (1) selection and engagement of the employee, (2) payment of wages, (3) power of dismissal, and (4) power of control of the employee's action[,]" and moreover, that only the power of control is dispositive). Appellant could still fire or evict appellee.

The accident occurred on appellant's property, a place where appellee was authorized and required to be as part of his employment obligation. Appellant operated McCluster Construction from his property. Thus, McCluster Construction employees are reasonably expected to be present on appellant's property. Appellee had even more reason to be on appellant's property because appellant rented a mobile home to appellee, and the mobile home was located on appellant's land. On the day in question, appellee was specifically expected to be there because

- 11 -

appellant sold that mobile home and surrounding plot of land. The area needed to be cleared in order for appellant to take advantage of the proceeds and pay off company debts and for appellee to vacate and move into a new home.

Appellee fulfilled duties of his employment or engaged in acts incidental to his employment on April 26th. The Commission analogized this case to Stapleton v. Powhatan Corr. Ctr., 62 O. I. C 428 (1983), and Dep't of Parks v. Howard, 445 S.W.2d 438 (Ky. Ct. App. 1969). In Stapleton, an employee fell while showering on-site. While not required to live on-site, the employee did so in order to be readily available to his employer. The Commission found that "this employer has made living on the premises a part of the employment contract; and under such circumstances, the claimant is considered as acting within the course of his employment in carrying out his usual living activities within the living quarters provided." Stapleton, 62 O. I. C. at 431. In Dep't of Parks, an employee who lived on-site resigned his position. His employer allowed him to use park equipment and personnel in moving out-it was in the employer's interest to do so in order for the new employee to occupy the on-site residence. The employee directed his coworker to assist him in moving furniture. The coworker was injured while moving the employee's furniture. The Commission found that the employee sustained injuries arising out of and in the course of employment because the injury was sustained "in performing an act for the benefit of a coemployee . . . [because] it advance[d] the employer's work." Dep't of Parks, 445 S.W.2d at 439.

In this case, appellee engaged in activities incidental to his employment. Living in the mobile home became part of appellee's employment contract. Additionally, appellant operated McCluster Construction as a sole proprietorship, so he is personally responsible for the liabilities of the company. See Recalde v. ITT Hartford, 254 Va. 501, 505-06, 492 S.E.2d 435, 437 (1997) (stating "[t]he sole proprietor is solely liable for all the debts of the business" (quoting Black's

- 12 -

Law Dictionary 1392 (6th ed. 1990))). Thus, appellant's business and personal life were interrelated. As such, the clearing was for the pair's mutual benefit[3]: appellee was required to vacate the premises, and appellant needed to close on the sale in order to pay off company debts. On April 26th, appellee worked under appellant's direction in clearing the area. Appellant operated the forklift, a company-owned machine, during the clearing process. Appellee rode along, as he often did on construction jobs, under the boom, and was seriously injured while disembarking. Because the clearing was for the pair's mutual benefit, required the use of company property, and occurred while appellant and appellee were acting in their employer-employee capacity, appellee's actions were either a responsibility of or incidental to his employment.

CONCLUSION

We see no reason to disturb the Commission's findings on appeal. It is clear that the composition of the review panel comported with the Code. The Chairman had acted in compliance with the Code by appointing a deputy commissioner to hear the matter in the event of an absence. Simply because a new commissioner had taken office a few days before the panel ruled on appellant's motion to reconsider its decision, the Commission was not required to have the new commissioner replace the deputy commissioner in ruling on the motion to reconsider with the two commissioners who had joined him in issuing the panel's decision. Because a quorum of the Commission was still achieved, the panel was authorized to take "judicial, legislative, and discretionary action." Code § 65.2-201(E). Therefore, the composition of the review panel was in accordance with the law. In addition, the Commission supported its findings

---

[3] Even if appellee derives a benefit from the work being done, that does not bar appellee from receiving compensation. See Brown, 209 Va. at 565-68, 165 S.E.2d at 397-99 (demonstrating that an employee sustaining an injury in an employer-provided parking lot, which existed for the mutual benefit of the employer and the employee, was still able to recover under the Act).

with credible evidence, including appellee's direct testimony, expert testimony, physical evidence, medical records, emergency calls, and reports.  Thus, appellee sustained compensable injuries arising out of and in the course of his employment.  As such, the Commission did not err in reversing the deputy commissioner.  Therefore, we affirm the Commission's rulings.

<u>Affirmed.</u>